IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01115-STV

**JO ELLIS**, an individual,

    Plaintiff,

v.

**MATTHEW S. WALLACE**, an individual,

    Defendant.

---

### SPECIAL MOTION TO DISMISS, PURSUANT TO C.R.S. § 13-20-1101

---

Defendant Matthew S. Wallace, through undersigned counsel, hereby submits his Special Motion to Dismiss pursuant to § 13-20-1101, C.R.S. (Colorado's anti-SLAPP law) respectfully requesting this Honorable Court dismiss Plaintiff's claims with prejudice, on the following grounds:

### CERTIFICATE OF CONFERRAL

Counsel have conferred and the relief requested herein is opposed by Plaintiff.

### I.    FACTUAL BACKGROUND

Plaintiff Jo Ellis ("Ellis") has filed a complaint against Defendant Matthew S. Wallace ("Wallace") engaging the judicial process and public opinion against Wallace for exercising his first amendment rights to comment on matters of significant public debate. The matters of public debate for which Plaintiff is suing Defendant are his statements regarding and related to his alleged "transphobia" manifest in various ways including his "misgendering" transpeople (*See e.g.*, Complaint ¶¶ 35, 36), his statements regarding and related to the practical effects of DEI policies

1

on the military, government, business and culture (*see e.g., screenshots, Id*. ¶¶ 20, 25, 34), and his alleged statements regarding and related to the current-events and issues of the day arising out of the collision of a military helicopter and commercial flight on January 29, 2025. *See e.g., Id.* ¶ 15 (allegation that Wallace "stated that the transponder was 'blacked out' on the helicopter for civilians."); *Id.* ¶ 16 (allegation that Wallace "posted numerous photos and videos related to the plane crash."; *Id.* (quote of Wallace's X post of January 29, 11:33 p.m., "Pay close attention to the site of the plane crash"); *Id.* ¶ 17 (allegation that Defendant suggested that articles were written about the crash prior to it occurring; *see also, Id. screenshot* of Defendant's X post, Jan. 30, 2025, 1:05 a.m., attached hereto as EXHIBIT 1 for convenience, indicating that CNN published an article 7 hours before the screenshot was taken, which would make the time of publication prior to the time of the crash.); *Id.* ¶ 18 *screenshot* of Defendant's posting a map of the flight-path taken by the American Airlines plane coming in to a smooth landing at Reagan National as well as the erratic flight-path the helicopter was taking before ending up directly in the landing path of Flight 5342 merely a few hundred meters away from the runway; on that map Wallace wrote, "That flight pattern of the Black Hawk helicopter does not look normal at all …") *See* EXHIBIT 2.

Defendant's statements, for which he is being sued herein, are indisputably "matters of public significance" entitled to anti-SLAPP protection. *See* 13-20-1101, C.R.S., "Action involving exercise of constitutional rights," subsection (1), which provides:

> The general assembly finds and declares that it is in the public interest to encourage continued participation in matters of public significance and that this participation should not be chilled through abuse of the judicial process.
>
> The general assembly finds that the purpose of this part 11 is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.

Ellis alleges having suffered as a result of Wallace's "transphobic attack", which he launched "[a]fter President Trump listed the Federal Aviation Administration's diversity, equity, and inclusion hiring practices … as potential causes of the crash." *Id.* ¶ 20. Ellis here admits that DEI was a public issue of the day since the President of the United States had published his opinion that the crash was in part due to hiring procedures that value matters irrelevant to flight safety.

Plaintiff spins an implausible tale to support her conclusion that Wallace knew she was not the pilot of the crashed helicopter but nonetheless claimed she was. The motive for Wallace's lying about Plaintiff's being the pilot in the fatal crash was his alleged "transphobia" and animus against transpeople. This bigotry, Plaintiff explains, is why "[w]hen Defendant learned a transgender Army Black Hawk pilot existed just outside of Washington, DC, he jumped at the opportunity to malign her and the entire transgender community to further President Trump's theory and his own 'trans terror attack' narrative." *Id.* ¶ 20.

However, this implausible story is proven *impossible* by evidence establishing that Wallace only learned that a transgender Black Hawk pilot was living in Washington D.C. when – and because – reports were being published stating that this transgender pilot was the one who crashed the helicopter. *See* Declaration of Defendant Mathew S. Wallace ("Def. Decl."), filed herewith, ¶¶ 3, 4.  It simply is not the case that Wallace first discovered that Jo Ellis was living in the D.C. area and then started the rumor that Ellis was the helicopter pilot.  The incomplete document (the timestamp is cut-off) embedded in Complaint paragraph 20 is identified as the first time Defendant published the false claim that Plaintiff was the helicopter pilot that crashed into Flight 5342. That document cannot serve as evidence of Plaintiff's tall tale, because a screenshot of an X post with the timestamp cut off is inadmissible pursuant to the Rule of Completeness, F.R.E. 106. Plaintiff admits that she does not know that Wallace was the first to post the claim that Jo Ellis was the pilot who crashed the helicopter, "There are many theories as to who actually started the outlandish lie

3

that Plaintiff was flying the Black Hawk". *Id.* ¶ 21. Plaintiff tries to establish the date and time of the incomplete document embedded in Complaint paragraph 20 by providing a screenshot embedded in paragraph 21 of a comment alleged to be posted to Defendant's X post by Saggezza Eterna on January 30, 2025, 4:33 p.m. CST, which contains the statement that Jo Ellis (CW2) was the helicopter pilot. *See* EXHIBIT 3. However, this screenshot is also inadmissible per Rule 106, as it cuts off the top so that reader of the Complaint is meant to presume that Saggezza Eterna is commenting on the Defendant's X post embedded in the previous paragraph, *see* ¶ 20, without the document's showing to whom the commenter is responding.

Assuming *arguendo* that Saggezza Eterna's comment was made to Wallace's X post would still fail to evidence Plaintiff's tale about Defendant's first finding out that Ellis was living in D.C. and then deciding to fabricate a story that Ellis was the pilot; because many hours before Saggezza Eterna's comment of 4:33 p.m. CST on January 30, 2025, the internet was replete with myriad posts identifying Jo Ellis, a transgender woman, as the helicopter pilot in the collision. *See e.g.* **Exhibit X** to Def. Decl., attached hereto as EXHIBIT 4 for convenience, X post by OhioHomegrown, January 30, 2025, 6:47 a.m. MST (indicating that "this has been confirmed through posts found on X, which identified the pilot of the Black Hawk helicopter involved in the collision near Reagan National Airport as Chief Warrant Officer 2 Jo Ellis, a transgender woman serving in the Virginia Army National Guard."); *see also* Def. Decl. ¶¶ 10-17 (identifying 8 more X posts from before 4:33 p.m. CST on January 30, 2025 that identify Jo Ellis as the pilot involved in the crash).

What's more, perhaps, is that Wallace's X post embedded in ¶ 20 of Plaintiff's Complaint was published on or about **11:30 p.m.** January 30, 2025. *See* Def. Decl. ¶¶ 28, 29; *see also* **Exhibit Y** to the Declaration, a copy of which is attached hereto as EXHIBIT 5 for convenience. Plaintiff's Complaint identifies the incomplete screenshot embedded at paragraph 20 as the first time

4

Defendant published the false claim that Plaintiff was the helicopter pilot that crashed into Flight 5342. The timing of that X post, around 12:30 a.m. CST, **January 31**, 2025, renders groundless Plaintiff's accusation that Wallace first discovered that a transgender pilot (Plaintiff) lived in the D.C. area and then decided to intentionally fabricate the lie that this transgender pilot was the helicopter pilot who crashed into flight 5342. By the time Wallace made his first post stating that Plaintiff was the helicopter pilot there were numerous (thousands) of reports stating that Jo Ellis was a pilot in that collision. *See* Def. Decl. ¶¶ 1- 47, and its attached **Exhibits A-Y**. Defendant Matthew Wallace testifies under penalty of perjury that he believed Jo Ellis was the pilot in question when he published statements to that effect (*Id.* ¶ 3) and that as soon as he discovered that Jo Ellis was alive and well (that is, was not the pilot in the fatal crash in question) he immediately posted a correction. *Id.* ¶ 9 ("I would never have implied that Jo Ellis was the pilot of the helicopter if I knew that was false, and once I discovered Jo Ellise was not the helicopter pilot, I immediately posted three separate posts on my account stating that Jo Ellis was not the pilot.").

Plaintiff's groundless accusations of mendacious bigotry against Wallace are coupled in this Complaint with false claims of having suffered economic damages resulting from Wallace's publishing the false statement that Plaintiff had died in a helicopter crash. First of all, Defendant was a late-comer when it came to publishing the false claim that Ellis was dead; second, Ellis corrected the record within moments of hearing of her own much-discussed death; third, Wallace made no less than three posts correcting the record himself; and perhaps most of all, *contrary* to Plaintiff's allegation of economic loss, the evidence demonstrates that Plaintiff has seen financial gain as a result of the notoriety resulting from the wide-spread reports of her death and has taken steps to increase the publicity of the mistake to capitalize on the controversy resulting therefrom. *See* Def. Decl. ¶¶ 5, 6, 35-39. Plaintiff's allegations of reputational damage are also suspect and unsupported by evidence. *Id.* ¶¶ 35-46. In any case, Plaintiff's reputational loss (if of any

5

significance at all) would be overshadowed by the increase in reputation among others more numerous and significant to Plaintiff than the few (if any) people who heard Defendant's report that Jo Ellis was the helicopter pilot but not the correction by Defendant, Plaintiff or anyone else.

In short, Plaintiff's single claim for Defamation rests on unsupported legal conclusions and factual inaccuracies. Plaintiff's conclusory allegation that "Defendant intentionally caused the publication of false … written statements about Plaintiff" (*see* Complaint, ¶ 46) is unsupported by evidence or logic. Mr. Wallace did not know that Ellis was alive when he published the statement that Plaintiff was dead. That should be obvious also as a matter of logic. Such a report would be self-defeating, as the live person who is reported dead would surely, easily and swiftly be able to disprove the report. Plaintiff fails to explain why anyone would want to publish the claim that "person X was dead" when he knew that "person X was not dead" when such a pronouncement of death could be (and was) contradicted by the living person almost immediately.

Plaintiff understands that "actual malice" is a necessary element of her legal claim against Wallace because the statements for which he is being sued here are indisputably matters of public concern and constitute his exercise of first amendment rights to participate in matters of public significance in a public forum on public issues and matters of public interest. *See New York Times v. Sullivan,* 376 U.S. 254, 270 (1964) (holding that the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," requires a rule requiring plaintiff prove that defendant made the statement with "actual malice" before imposing liability); *see also Brokers' Choice of Am.*, *Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017) ("Colorado law goes further [than *New York Times v. Sullivan*]. **For statements relating to matters of public concern, all plaintiffs, public or private, must prove actual malice**") (emphasis added) (citing *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1105-06 (Colo. 1982); *Quigley v. Rosenthal*, 327 F.3d 1044, 1058 (10th Cir. 2003)). But

6

Plaintiff's tall tale, incomplete documents, false presumptions and conclusory assertions are transparently inadequate and insufficient to establish that Wallace deliberately fabricated and intentionally lied about Plaintiff's being the helicopter pilot in the fatal crash of January 29, 2025.

Inspection of Plaintiff's Complaint reveals that buried just beneath the surface of its claim of "defamation" is the censor's pencil, sharpened to punish Defendant for voicing protected speech. The statements for which Mr. Wallace has been dragged here to Court are obviously *not* "unprivileged written statements about Plaintiff" as Ellis asserts at Complaint ¶ 46, but rather, they are precisely the type public speech regarding matters of public significance that are entitled to anti-SLAPP protection (*see* C.R.S. § 13-20-1101(2)(a)(III-IV)[1]) and matters of public concern entitled to <u>qualified privilege</u> (*see Lewis v. McGraw-Hill Broad. Co.,* 832 P.2d 1118, 1121 (Colo. App. 1992) ("if the statement related to [plaintiff's] involvement in an event of public concern, First Amendment protections required clear and convincing proof that the statement was known by the declarant to be false or made with reckless disregard for its truth."), or even the <u>absolute privilege</u> provided statements of opinion on matters of public interest, discussion and significance. *See Lawson v. Stow,* 2014 COA 26, ¶¶ 30-31("Statements of pure opinion are constitutionally protected — that is, they are not actionable defamation [citations omitted] …. First, the court must determine if the statement is sufficiently factual to be susceptible of being proved true or false. [citations and quotation marks omitted] Second, the court must determine whether reasonable people would conclude that the assertion is one of fact. [citations omitted]"). For the reasons discussed below, Ellis' defamation claim must be dismissed with prejudice as a matter of law.

## II.    LEGAL ARGUMENT

---

[1] *See Moreau v. United States Olympic & Paralympic Comm.,* 641 F. Supp. 3d 1122, 1133 (D. Colo. 2022) ("Colorado's anti-SLAPP law is applicable in federal court").

## PROCEDURE UNDER THE COLORADO ANTI-SLAPP LAW

Colorado's anti-SLAPP law was recently enacted to protect the free speech rights of Colorado residents and to ensure that they "should not be chilled through abuse of the judicial process." § 13-20-1101(1), C.R.S.; *see Rosenblum v, Budd*, 2023 COA 72, ¶ 23; *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 1; *Creekside Endodontics, L.L.C. v. Sullivan.*, 2022 COA 145, ¶¶ 21-22. Accordingly, the statute provides a highly expedited process "to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case," *Kunysz v. Sandler*, 53 Cal. Rptr. 3d 779, 781 (Cal. App. 2007),[2] by requiring that an anti-SLAPP motion must be filed within 63 days after service of the claims against a person, and that a hearing on the anti-SLAPP motion must be scheduled no later than 28 days after the motion is served. § 13-20-1101(5).

Upon the filing of an anti-SLAPP motion, all discovery is automatically stayed. § 13-20-1101(6). The Court is to decide whether to grant the motion on the briefing and supporting affidavits. § 13-20-1101(3)(b). If the motion succeeds, the claims are dismissed with prejudice and the moving party is awarded his reasonable attorney fees and costs. § 13-20-1101(4)(a). If the motion is denied, the denial is subject to an immediate interlocutory appeal as of right. § 13-

---

[2] The Colorado Court of Appeals instructs trial courts to turn to California anti-SLAPP law for guidance in determining anti-SLAPP motions:

"Because few cases have applied Colorado's anti-SLAPP statute, and because it closely resembles California's anti-SLAPP statute, we look to California case law for guidance in outlining the two-step process for considering a special motion to dismiss. *See* Cal. Civ. Proc. § 425.16 (West 2022); *see also People v. Palomo*, 272 P.3d 1106, 1112 (Colo. App. 2011) ( "On matters of first impression, we may refer to decisions of other jurisdictions construing and applying similar statutes on the same subject for guidance."); *Stevens v. Mulay*, Civ. A. No. 19-cv-01675-REB-KLM, 2021 U.S. Dist. LEXIS 57594, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021) (unpublished order) ("[B]ecause Colorado's anti-SLAPP law is relatively new and untested, and given that it tracks California's statute almost exactly, it is appropriate to draw from the more well-established body of authority interpreting the California law.")."

*L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 20; *see also, Moreau v. U.S. Olympic & Paralympic Comm.,* 641 F. Supp. 3d 1122, 1129 (D. Colo. 2022) (explaining that, because of the similarities between California's and Colorado's respective anti-SLAPP statutes, state and federal courts have looked to California case law in construing Colorado's statute).

20- 1101(7).

Under the statute, any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue is subject to a special motion to dismiss unless the court determines that the [claimant] has established that there is a reasonable likelihood that the [claimant] will prevail on the claim." *See* § 13-20-1101(3)(a), C.R.S.  Our Colorado Courts have interpreted this language to have created a two-step process for determining whether an action should be dismissed pursuant to the Colorado anti-SLAPP statute. *See L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 20; *see also Creekside Endodontics, LLC v. Sullivan,* 2022 COA 145, ¶ 25.  First, the Defendant must make a *prima facie* showing that the Plaintiff's claim arises "from any act . . . in furtherance of the [Defendant's] right of petition or free speech … in connection with a public issue." *See* § 13-20-1101(3)(a), C.R.S.; *see also L.S.S.*, ¶ 21 (a mere "threshold" showing is all that's required to meet defendant's burden); *see also, Rosenblum v. Budd*, 2023 COA 72, ¶ 24 (Defendant must make a "threshold" showing); *see also, Rocky Mtn. Rebar Inc. v. Wanzek Constr. Inc.,* 2025 U.S. Dist. LEXIS 53087, at *5 (D. Colo. Mar. 21, 2025) ("defendant must make a 'prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech.'") (quoting *CoreCivic, Inc. v. Candide,* 46 F.4th 1136 (9th Cir. 2022)).

Once Defendant makes that threshold showing, the burden then shifts to the Plaintiff to "establish[] that there is a **<u>reasonable likelihood</u>** that [he] will prevail. " *L.S.S.,* ¶ 23. This second step triggers "a summary judgment like procedure in which the court reviews the pleadings *and the evidence* to determine whether the plaintiff has stated a legally sufficient claim and made a prima facie *factual showing* sufficient to sustain a favorable judgment." *Id.* (internal quotations and citations omitted) (emphasis added). Importantly, Plaintiff's "factual showing" must be made by producing admissible evidence. *See Finton Constr., Inc. v. Bidna & Keys, APLC*, 190 Cal. Rptr.

3d 1, 12 (Cal. App. 2015). That evidence must not only be admissible, but when the tort claim requires "actual malice" to establish liability, then Plaintiff must adduce "clear and convincing" evidence of that element, and of course Plaintiff must establish a "reasonable likelihood of prevailing," he is unable to do so when his claim arises from an "absolutely privileged" matter of opinion, or a claim that fails to "meet the defendant's [other] constitutional defenses". *See Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359 (1995); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 108 (2007).

### A. ELLIS'S CLAIMS ARE SUBJECT TO THE ANTI-SLAPP STATUTE

The Colorado anti-SLAPP statute § 13-20-1101 specifies that an "act in furtherance of a person's right of petition or free speech … in connection with a public issue," for which the statute provides protection, includes:

> (2)(a)(III) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

It is indisputable that the X posts that Defendant Wallace made, which are the basis of Ellis' claims for defamation, were made "in a place open to the public or a public forum". It is also indisputable that those statements were connected to issues of public interest and debate. As mentioned above, each and all of Defendant's statements identified by the Complaint were related to the public issues and current-events of the day: debate over DEI policies, the use of pronouns for transgendered persons, characterization of decisions to transgender as caused by a pathological "gender dysphoria" versus a self-perception of one's authentic nature, and of course the news of the aircraft collision on January 29, 2025. That is to say, Wallace has been sued for speech "[a]cts in furtherance of a person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue" (§ 13-20-1101(2)(a), C.R.S.) and therefore, Colorado's anti-SLAPP statute applies to the above-captioned Complaint. Plaintiff's claims arise

directly from the Defendant's actions to exercise his freedom of speech in connection to the issues and news of the day in public. It is clear that the Defendant's burden of making a prima facie or "threshold showing" that the anti-SLAPP law applies has been met, and thus the burden shifts to Ellis to adduce sufficient admissible evidence, including "clear and convincing" evidence where required, to demonstrate a reasonable likelihood that Plaintiff can prevail on their claims.[3]

### B. ELLIS CANNOT MEET PLAINTIFF'S BURDEN REQUIRED IN THIS ANTI-SLAPP SPECIAL MOTION

Where, as here, the allegedly defamatory statements complained of pertain to a matter of public interest or concern, then in order to prevail on a claim for defamation under Colorado law, the Plaintiff must prove all of the following elements: that Defendant (1) published to third parties, (2) one or more materially false statements, (3) about the Plaintiff, that (4) was defamatory, (5) which proximately caused Plaintiff to sustain special damages, and (6) that the Defendant published the statements with actual knowledge of their falsity or with a "high degree of awareness of their probable falsity." *i.e.,* with "actual malice". *See Lawson v. Stow*, 2014 COA 26, ¶ 18 ("Where a statement relates to a matter of public concern, the speaker's communication is subject to a qualified privilege. … [Plaintiff] is subject to heightened burdens of proof. These are: (1) the defamed party must prove the falsity of the statement by clear and convincing evidence, rather than by a mere preponderance; (2) the defamed party must prove that the speaker published the statement with actual malice — that is, with actual knowledge that the statement was false or with

---

[3] Public accusations of wrongdoing, though controversial, are specifically identified in relevant cases as properly discussed in public without being subjected to liability. *See, Thomas v. City of Blanchard*, 548 F.3d 1317, 1327 (10th Cir. 2008) ("speech about possible illegality"); *see also Todd v. Lovecruft*, 2020 U.S. Dist. LEXIS 2309, at *44 (N.D. Cal. Jan. 6, 2020) (recognizing "Publicly accusing individuals … is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate" [citation omitted]); *see Lawson, supra,* 346 (quoting *City of San Diego v. Roe,* 543 U.S. 77, 83-84 (2004) ("public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication").

11

reckless disregard for whether the statement was true; and (3) the defamed party must establish actual damages to maintain the action, even if the statement is defamatory per se.").

Plaintiff's burden to prove "actual malice" by "clear and convincing" evidence carries over to the determination of whether plaintiff has met his burden in the anti-SLAPP analysis. *See L.S.S. v. S.A.P.*, 2022 COA 123, ¶¶ 42-43 ("[i]f a Plaintiff is pursuing a defamation claim that will ultimately require proof of actual malice by clear and convincing evidence, to survive an anti-SLAPP motion, the plaintiff must establish a probability that they will be able to produce clear and convincing evidence of actual malice… The rule we espouse is also consistent with Colorado cases applying the clear and convincing evidence standard at the summary judgment stage. *See DiLeo v. Koltnow*, 200 Colo. 119, 125-26, 613 P.2d 318, 323 (1980)".).

Defendant's testimony in the Declaration of Matthew S. Wallace filed herewith, is that he honestly believed Plaintiff Jo Ellis was dead when he published X posts implying that Jo Ellis was the pilot in the fatal crash. The reason he thought that Plaintiff was dead is because the evidence he saw lead him to that belief. *See* Def. Decl., ¶¶ 3, 4, 9, 10–17, 31, 32, 33; *see also*, EXHIBIT 4 (indicating that approximately 17 hours prior to Defendant's first post on the subject, Grok (X's AI search tool) at 7:47 a.m. CST on January 30, 2025, confirms that Jo Ellis was the helicopter pilot in the fatal crash). As discussed above, not only does the evidence show that Wallace did not "lie" when he published the mistaken claim that Jo Ellis was the pilot in question, but as a matter of logic and common sense, it clearly makes no sense for Wallace to have published a knowingly false claim that Ellis was part of a deadly crash with no survivors because that publication would be (and was) easily and swiftly corrected. In short, Plaintiff is unable to meet the burden of establishing a reasonable likelihood of proving that Wallace intentionally lied about Ellis by clear and convincing evidence against Defendant.

There is not much more than unsupported conclusory assertions of "actual malice" in the Complaint (*see e.g.,* Complaint ¶ 35 ("Defendant's lies"); *Id.* ¶ 36 ("the lie about Plaintiff"), *Id.* ¶ ("lies he spread about Plaintiff"); etc.). However, Plaintiff does provide her speculation about the assumed motivation of Wallace for these asserted "lies" at ¶ 39 of the Complaint, stating: "Defendant's financial motive to peddle his false narrative and lie about Plaintiff's involvement in 'another trans terror attack' was substantial." This conclusory assertion is also unsubstantiated and – in fact, entirely false. *See* Def. Decl. ¶¶ 5, 34 ("I made $0 from any post related to the crash because X fully demonetizes any posts pertaining to tragedies."). As mentioned above, Ellis also provides an incredible and unsubstantiated tall tale asserting that Wallace first somehow discovered that there was a transgender military helicopter pilot living in the D.C. area and then knowingly fabricated the lie that said transgender pilot was the one involved in the crash. *See* Complaint ¶¶ 20-21. This speculative tale is disproven by the evidence. *See* Def. Decl. ¶¶ 4, 10-17 and their respective **Exhibits A-W**; *see also Id.* ¶ 28 and its **Exhibit Y** (indicating that Defendant's initial post implying Plaintiff was the pilot was published at approximately 12:30 a.m. CST January 31, 2025). Having provided nothing but conclusory assertions of lying, disproven speculations of financial motive, and a tall tale of bigoted mendacity, Plaintiff's Complaint is unable to establish that Wallace knowingly lied.

Ellis' conclusory assertion that Wallace used "grossly inadequate methods of investigation" is similarly unsupported by evidence or logic. *See* Complaint ¶ 49 (Making the conclusory (and false) assertion that Wallace published his claim about Plaintiff "despite having no sources or firsthand knowledge.") Again, Defendant relied on myriad sources (including an AI aggregator of thousands of reports) that reported Plaintiff was the pilot. Furthermore, as a matter of logic, Plaintiff's accusation of "recklessness" is equally applicable to the thousands of others who published the same claim. In short, Ellis' other theory of "recklessness" is also unsupported.

The Court should dismiss Plaintiff's claims pursuant to § 13-20-1101(3)(a), because Ellis cannot meet plaintiff's burden of demonstrating a reasonable probability of proving Defendant's "actual malice". Colorado courts have routinely granted dispositive motions, including under the anti-SLAPP Act, upon concluding that plaintiff did not satisfy the heavy burden of demonstrating actual malice by clear and convincing evidence. *See, e.g., Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145; *DiLeo v. Koltnow*, 613 P.2d 318 (Colo. 1980); *Seible v. Denver Post Corp.*, 782 P.2d 805 (Colo. App. 1989); *Brooks v. Paige*, 773 P.2d 1098 (Colo. App. 1988); *Bowers v. Loveland Publ'g Co.*, 773 P.2d 595 (Colo. App. 1988); *Fink v. Combined Commc'n Corp.*, 679 P.2d 1108 (Colo. App. 1984). The Court is respectfully requested to do so with respect to this Motion as well.

Furthermore, even assuming *arguendo* that Ellis were able satisfy the burden of proving "actual malice" by clear and convincing evidence (as discussed above, Plaintiff cannot), she still cannot establish her defamation claims stemming from Wallace's publications of statements of his opinions on DEI, transgenderism, pronoun use, the pathological nature of "gender dysphoria" and other public issues. Such statements are subject to an absolute privilege recognized under Colorado law. Colorado's common law recognizes that an "absolute privilege" from defamation liability is provided to statements of opinion "no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *See Bucher v. Roberts*, 198 Colo. 1, 4 (1979); *see also, Wilson v. Meyer*, 126 P.3d 276, 280 (Colo. App. 2005) ("To ensure uninhibited, robust, and wide-open debate on matters of public concern, statements of opinion are constitutionally privileged.") (citing *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994); *see also, TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1183 (10th Cir. 2007) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990); quoting Restatement (Second) of Torts § 566 ("defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies

14

the allegation of undisclosed defamatory facts as the basis for the opinion."); *see also Lawson, supra,* ¶ 31.

Even further, many of Defendant's statements identified in the Complaint cannot be "clearly and convincingly" proven false by Plaintiff – because they are true. For example, Wallace's statement that the transponder was "blacked out" (*see* Complaint ¶ 15; Def. Decl. ¶ 19) and so the helicopter was not visible to the commercial jet's instrumentation is not "clearly and convincingly" false; Wallace's statement that the helicopter's flight-path was "off" and "not normal" (Complaint ¶¶ 16-18) is not "clearly and convincingly" false (*see* Def. Decl. ¶ 20 and map of flight-paths embedded in Complaint ¶ 18); Wallace's statement that articles were written about the crash prior to the crash's occurrence is actually provided evidenced by the screenshot embedded in ¶ 17 of the Complaint; Wallace's post pointing out that it was very strange for the crash to occur so close to a runway (Complaint ¶ 16) is also not "clearly and convincingly" false; and of course, there is nothing "clearly and convincingly" false about posting video of the crash and commenting on how much time the helicopter had to divert (*Id.* ¶ 19), nor posting "numerous photos and videos related to the plane crash" (*Id.* ¶ 16).

Finally, the Plaintiff asserts without substantiation or plausibility that Wallace's X posts implying that Jo Ellis was the helicopter pilot in question were the proximate cause of Plaintiff's alleged damages. Because of the vast number of statements asserting that Jo Ellis was the transgendered pilot who crashed into Flight 5342 **published prior** to any similar statement by Defendant, and because Defendant's "comments on the story represent far less than 1% of the total views the story got on social media" (*see* Def. Decl. ¶ 31), it is plain that Wallace's statements were not the proximate cause of Plaintiff's alleged damages. Additionally, it is not at all clear that Plaintiff suffered any economic damages or noneconomic damages. S*ee* Def. Decl. ¶¶ 6, 35-46.

15

## CONCLUSION

Based upon the factual background and legal argument presented above, as well as the exhibits attached hereto, and the Declaration of Defendant filed herewith and its attached exhibits, Defendant Matthew S. Wallace does respectfully request that this Court dismiss with prejudice Plaintiff's claims pursuant to C.R.S. § 13-20-1101.

RESPECTFULLY SUBMITTED

DATED: July 28, 2025,

By: _/s/Dan Ernst_____
Dan Ernst, #53438
217 E. 7th Ave.
Denver, CO 80203
(720) 798-3667
dan@ernstlegalgroup.com
*Attorney for Defendant Wallace*

---

## CERTIFICATE OF SERVICE

The undersigned certifies that on <u>July 28, 2025</u>, a copy of the above anti-SLAPP special motion to dismiss and its attached declarations were served on counsel for Defendant by email through the Colorado Court's E-Filing Service, ICCES at the following:

*Attorneys for Plaintiff*
Meg Phelan, SC Bar No. 78209
EQUALITY LEGAL ACTION FUND
P.O. Box 81465
Lincoln, Nebraska 68501
(618) 680-0292
meg.phelan@equalityactionfund.org


By:   ERNST LEGAL GROUP, LLC

_/s/Dan Ernst_____
*Attorney for Defendant Wallace*

16