**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO DISTRICT**

Civil Action No. 1:25-cv-01115-STV

JO ELLIS,

        Plaintiff,

v.

MATTHEW S. WALLACE,

        Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL MOTION TO DISMISS
PURSUANT TO COLORADO REVISED STATUTES § 13-20-1101**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

    Plaintiff Jo Ellis files this Response to Defendant's Special Motion to Dismiss Pursuant to Colorado Revised Statutes ("C.R.S.") § 13-20-1101 (the Motion), and states as follows:

**I.    INTRODUCTION**

    1.    This case is not about Matthew Wallace's ("Defendant's") right to discuss matters of public concern, nor is it about punishing transphobia. This case boils down to one, uncontroverted fact: Defendant lied to millions of social-media users, falsely charging that Jo Ellis ("Ms. Ellis") intentionally killed 67 innocent individuals on January 29, 2025. Neither the First Amendment nor Colorado law shields speakers when they seek to profit off such reprehensible fabrications.

    2.    Defendant's Motion focuses on three elements of Ms. Ellis's defamation claim: falsity, fault, and damages. As to falsity, Defendant asserts that parts of some of his social-media posts about the January tragedy are true. But those snippets are not at issue in this case. The

1

issue, rather, is Defendant's repeated assertion that Ms. Ellis caused the January crash. And Defendant does not (and cannot) dispute the falsity of that assertion.

3. As to fault, Defendant leans on his own, self-serving declaration as proof that he did not act with actual malice—*i.e.*, with at least reckless disregard for the truth of his social-media posts—when he defamed Ms. Ellis. As the U.S. Supreme Court has emphasized, however, a defendant's say-so is not conclusive as to actual malice, particularly when, as here, there is a mountain of circumstantial evidence showing that Defendant published his statements with actual malice. Defendant's own sworn statements about about the supposed "source" for his posts, his obvious motives for publishing the posts, and his long-term efforts to advance an anti-trans narrative create at least a jury question as to actual malice; they more than suffice to satisfy the substantially lower bar for overcoming an anti-SLAPP motion.

4. As to damages, Defendant contends, with no real support, that Ms. Ellis cannot show actual harm from Defendant's defamatory statements. Ms. Ellis' declaration, as well as her conduct in the wake of Defendant's posts, conclusively give the lie to Defendant's contention. It can hardly be surprising that, after Defendant told his 2.3 million followers on X that Ms. Ellis had engaged in terrorism and mass murder, Ms. Ellis suffered immense pain, distress, and humiliation, and was forced to wholly reorient her day-to-day life. All of that constitutes compensable, actual harm under Colorado law.

5. Colorado's anti-SLAPP statute is not a license to lie without consequence. It exists to weed out only those cases lacking even minimal merit. This is plainly not such a case. The contested issues, especially fault, are precisely the sort least susceptible to summary resolution. Defendant's Motion must be denied.

## II.   BACKGROUND

**A.     The Parties**

6.      Ms. Ellis was a private individual before Defendant's spread a malicious campaign against her accusing her of terroristic acts because she was a transgender Army Black Hawk pilot. *See* Exhibit 1. Ms. Ellis has been in the Virginia Army National Guard since 2009 and has been a qualified Black Hawk pilot since 2020. *Id*. at ¶ 2.While Defendant was born biologically male, she transitioned as a female in 2023. *Id*. at ¶ 5. After her transition, Defendant made her social media private to protect herself and family from unwanted attention. *Id*. at ¶ 3.

7.      Defendant is a cryptocurrency investor and YouTube personality with over 2.3 million followers on X (formerly Twitter). He uses multiple profiles on X, including @MattWallace888, @JackWallace888, @JackWallace008, and @Final_StandDoge. His primary X profile, @MattWallace888, has 2.3 million followers and is "verified." *See* Exhibit 11. He also maintains at least two TikTok accounts–@MattWallace777 and @realmattwallace_001. *See* Exhibit 12. Since this lawsuit was filed, Defendant has started cohosting "Untamed Nation," a conservative daily podcast, with Joe Oltmann. *See* Exhibit 13.

**B.     Defendant's defamatory statements about Ms. Ellis**

8.      Just hours after a midair collision between a Black Hawk helicopter and a commercial airliner on January 29, 2025, Defendant falsely alleged that Ms. Ellis was responsible for the horrific crash that killed 67 people. *See* Exhibit 1, ¶ 7; *see also* Exhibit 2. He included Ms. Ellis' picture in his initial viral post in which he credited his "brother," user @JackWallace888. *See* Exhibit 2. There is significant dispute as to the timing of this post and it is Ms. Ellis' that Defendant's comment was posted at approximately 4:06 p.m. MST on January 30, 2025. *See* Complaint, ¶¶ 3 and 20-21; *see also* Exhibit 15.

9. After that post went viral, he deleted it and proceeded to spread new and even more damaging lies about Ms. Ellis. *See* Exhibit 1, ¶ 8. He posted a clip of a podcast interview she had done and falsely claimed she "wrote a long letter about 'Gender Dysphoria' and depression" the day before the crash. *Id.*; *see also* Exhibits 3 and 4. He then posted more photos of Ms. Ellis and accused her of participating in "another trans terror attack." *See id.*, ¶; *see also* Exhibit 4. One such post garnered 4.8 million views on X. *See* Exhibit 4.

10. Defendant extended his malicious campaign to TikTok, posting side-by-side photos of Ms. Ellis with the caption: "A transgender Black Hawk pilot wrote a letter about depression and 'Gender Dysphoria' 1 day before the fatal crash! / What happened may have been another trans terror attack..." *See* Exhibit 1, ¶ 9; *see also* Exhibit 5. In that post, he used the hashtag "#goviral," indicating an intent to maximize reach and traffic. *Id*. That defamatory TikTok post is still available on his profile as of this filing. *Id*.

11. When confronted or after his lies were exposed, Defendant "instantly blamed other X users"—specifically @FakeGayPolitics—and rattled off a variety of excuses as to why the rumors about Ms. Ellis' involvement "seemed believable." *See* Exhibit 1, ¶ 18; *see also* Exhibits 6 and 8. Unfortunately for Defendant, user @FakeGayPolitics immediately and publicly provided evidence indicating that Defendant posted the information first. *See* Exhibit 1, ¶ 18; *see also* Exhibits 9 and 10.

### III.   ARGUMENT

12. Anti-SLAPP laws serve a limited purpose–to enable courts to dismiss frivolous cases brought with the intent to chill one's constitutional rights. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1160 (Cal. 2019); *see also Baral v. Schnitt*, 376 P.3d 604, 608

(Cal. 2016) (noting the core-goal of the anti-SLAPP statute is to weed out "meritless claims").[1] To achieve that aim, Colorado's anti-SLAPP statute employs a two-step analysis. First, courts must determine whether the statute applies. For purposes of Defendant's Motion, Plaintiff stipulates that the anti-SLAPP statute applies because Defendant's false and defamatory statements concerned a public issue—the United States' first midair collision in 16 years, resulting in the tragic loss of 67 lives. *See* C.R.S. § 13-20-1101(3)(a).

13. Given Ms. Ellis' stipulation, this Court's decision on Defendant's Motion comes down to the second step of the anti-SLAPP analysis, wherein the Court must ask whether there is a "reasonable likelihood that the plaintiff will prevail on the claim[s]" by reviewing the pleadings and affidavits. C.R.S. § 13-20-1101(3)(a)-(b); *see Salazar v. Public Trust Institute*, 2022 COA 109M, ¶ 20. California courts interpret their nearly identical statute to mean that, so long as a plaintiff can present evidence of a prima facie showing for each claim, the court must not dismiss the claims. *See Baral*, 376 P.3d at 608-09; *see also* Cal. Civ. Proc. § 425.16(b)(1)-(2)[2]; *see also Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 718 (Cal. 2019) (finding plaintiff "need not prove her case to the court; the bar sits lower, at a demonstration of 'minimal merit'") (internal citations omitted). In making this assessment, the Court only looks to whether the plaintiff "has stated a legally sufficient claim and made a prima facie factual showing." *Baral*, 376 P.3d at 608.

---

[1] As the Colorado statute is "relatively new and untested," but "tracks California's statute almost exactly," courts may look to California's "more-established body of authority" in applying the Colorado statute. *Stevens v. Mulay*, No. 19-cv-01675, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021).

[2] California's statute requires the plaintiff to show a "probability" of success on the claim, Cal. Civ. Proc. § 425.16(b)(1) (West 2022), whereas Colorado's statute requires a showing of "reasonable likelihood," § 13-20-1101(3)(a), C.R.S. 2022. Colorado courts have used these terms interchangeably. *See Salazar*, ¶¶ 22-23 (concluding that "'reasonable likelihood' in the anti-SLAPP statute is synonymous with 'reasonable probability'"); *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009) (using "reasonable probability" and "reasonable likelihood" interchangeably); *People v. Casias*, 2012 COA 117, ¶ 63 (recognizing that "reasonable likelihood" and "reasonable probability" are "substantively identical" (*quoting State v. Knight*, 734 P.2d 913, 919-20 (Utah 1987))).

The Court does not weigh the evidence and must accept all evidence in the plaintiff's favor as true. *See id.* at 608–609. As the California Supreme Court noted in *Baral*:

> The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity.

*Id.* Once a plaintiff provides the minimum quantum of evidence to show a legally cognizable claim, the plaintiff has satisfied its burden under the second prong. *See id.*

**A.     Ms. Ellis has more than sufficient evidence to establish a reasonable likelihood of success on her claim.**

14.     Under Colorado law, the elements for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist. Court, Second Judicial Dist., City & Cnty. of Denver*, 866 P.2d 908, 911 n.4 (Colo. 1993). When the defamatory statement pertains to a matter of public concern, there are three additional burdens the plaintiff must prove *at trial*: (1) the statement's falsity by clear and convincing evidence; (2) that the defendant published the statement with actual malice, which also must be proven by clear and convincing evidence; and (3) actual damages, even if the statement is defamatory per se. *See Coomer v. Salem Media of Col., Inc.*, 565 P.3d 1133, 2025 COA 2, ¶ 22; *see also L.S.S. v. S.A.P.,* 523 P.3d 1280, ¶ 36 (Colo. App. 2022).

15.     At this stage of the proceeding, Ms. Ellis need only establish a *reasonable likelihood* that she would be able to produce at trial clear and convincing evidence of falsity and actual malice. *See L.S.S.*, 523 P.3d at ¶ 42. Federal courts in Colorado impose a minor burden of production on public-interest defamation plaintiffs as to actual malice. *See Coomer v. Trump,* 552

P.3d 562, 2024 COA 35, ¶ 87; *see also L.S.S.*, at ¶ 41; *Coomer v. Make Your Life Epic, LLC*, 659 F. Supp. 3d 1189, 1200 (D. Colo. 2023). To defeat an anti-SLAPP motion, the plaintiff generally must present evidence, typically in the form of an affidavit, establishing a "reasonable likelihood of success." *See L.S.S.*, at ¶ 33. "Once affirmed in an affidavit, the plaintiff's assertions are no longer mere allegations; they are evidence. And that evidence must be accepted as true." *Coomer v. Trump*, 552 P.3d 562, ¶ 68; *see also L.S.S.* at ¶ 23.

16. Actual malice is a subjective standard and may be demonstrated through circumstantial evidence, including by showing that there are "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Talley v. Time, Inc.*, 923 F.3d 878, 896–97 (10th Cir. 2019); *see also Fink v. Combined Commc'ns Corp.*, 679 P.2d 1108, 1111 (Colo. App. 1984) (recognizing that "a complete failure to investigate sources of corroboration of published statements may be evidence of actual malice"). Other circumstantial evidence of actual malice includes: (1) the speaker's hostility toward the plaintiff; (2) inconsistencies in the source's account; (3) reasons to doubt the veracity or reliability of the source; (4) the inherent probability of the claim; and (5) other credible information contradicting the information. *See id*; *see also L.S.S.*, ¶ 40; *Gonzales*, ¶ 81; *Anderson*, ¶¶ 64-67. Conversely (and for obvious reasons), a defendant cannot defeat a defamation claim simply by "testifying that he published with a belief that the statements were true." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

    a. **Defendant's statements were false.**

17. Defendant publicly alleged that Ms. Ellis was the pilot of the Army Black Hawk helicopter that collided with an American Airlines airplane over the Potomac River. *See* Exhibits 1 and 2. Defendant also publicly alleged that Ms. Ellis intentionally crashed the helicopter into the commercial airliner in a terroristic murder-suicide plot after she learned that President Trump

7

banned transgender individuals from serving in the military. *See* Exhibits 1-3. Those allegations are transparently false—most obviously because Ms. Ellis is alive to file this lawsuit. Defendant himself acknowledges Ms. Ellis did not, in fact, pilot the helicopter that supposedly caused the horrible mid-air collision. *See* Def. Decl. (ECF No. 16-6), ¶ 9. So not only is Defendant not entitled to dismissal based on falsity, but Plaintiff is entitled to partial summary judgment on that element of her claim.

18.     Rather than contesting the falsity of the allegations actually at issue in this case, Defendant devotes a substantial part of his brief to arguing that bits and pieces of other statements not at issue here were either true, opinion, or at least not provably false. *See id.*, ¶¶ 19-26. Defendant's arguments along those lines are classic red herrings. The question, for falsity purposes, is whether Defendant's defamatory allegation—that Ms. Ellis piloted the helicopter involved in the crash over the Potomac River—is false. And, again, there is no question that it was.

        **b.     Ms. Ellis has evidence establishing a prima facie showing for actual malice.**

19.     To prove that Defendant published his statements with actual malice, Ms. Ellis must show that the statements were made with at least reckless disregard for the truth. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1110–11 (Colo. 1982). Since defamation defendants "are prone to assert their good-faith belief in the truth of their publications," such that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks*, 491 U.S. at 668. In addition, the Supreme Court of the United States has admonished that because "proof of 'actual

malice' calls a defendant's state of mind into question," where lack of fault is not clear, this element "does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, n.9 (1979). Courts have considered countless circumstantial factors as sufficient to establish that a defendant has acted with actual malice, including: when a story is fabricated by a defendant or is the product of his imagination;[3] when a defendant relies on anonymous sources;[4] when a defendant had reason to know his source was unreliable;[5] when the allegations made are inherently improbable;[6] when a defendant intentionally avoids the truth;[7] when a defendant's allegations conform to a preconceived storyline;[8] and when a defendant has a financial incentive to make the defamatory statements.[9]

20. According to Defendant's own declaration, his "friend" (the anonymous person with access to X account @JackWallace888) texted him the evening of January 30, 2025, and shared information that Ms. Ellis was a transgender Army Black Hawk pilot. *See* Def. Exhibit 5 (ECF No. 16-5). However, the text messages provided by Defendant have multiple issues. First, there is no indication that those are actually text messages. Defendant only provided a screenshot of shared tweets from users @GaryPatriot1776 and @JackWallace888 with time stamps of 11:23 PM, 11:25 PM, and 11:31 PM. The screenshots do not indicate who sent or received those

---

[3] *See St. Amant*, 390 U.S. at 731-32.
[4] *Id.*; *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016).
[5] *See St. Amant*, 390 U.S. at 732; *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 190 (2d Cir. 2000); *Wells v. Liddy*, 186 F.3d 505, 542–43 (4th Cir. 1999); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017).
[6] *See St. Amant*, 390 U.S. at 732; *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 190 (2d Cir. 2000); *Wells v. Liddy*, 186 F.3d 505, 542–43 (4th Cir. 1999); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017).
[7] *See St. Amant*, 390 U.S. at 732; *Spacecon Specialty Contractors, LLC. v. Bensinger*, 782 F. Supp. 2d 1194, 1201 (D. Colo. 2011), aff'd sub nom., 713 F.3d 1028 (10th Cir. 2013); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 46 (D.D.C. 2002), aff'd., 350 F.3d 1272 (D.C. Cir. 2003).
[8] *See Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 693 (noting the failure to review available evidence and attempt to interview known key witnesses can constitute evidence of actual malice); *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1361 (Colo. 1983); *Kuhn v. Trib.-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981).
[9] *See Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) (noting a defendant's effort to make evidence conform to a preconceived story can be "powerful evidence" of malice); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 674-75 (W.D. Va. 2019); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. at 872 (W.D. Va. 2016).

messages or the date on which they were sent/received. Because they lack data necessary to determine whether they show the sequence of events Defendant claims they show, the screenshots have no probative value for Defendant.

21.     But even taking Defendant's claims about the screenshots as true, the screenshots undermine his case rather than supporting it. In particular, the screenshots do nothing more than identify Ms. Ellis as a transgender person in the military and state, "I'm hoping this wasn't intentional regarding the pla[n]e [*sic*] crash at DCA." *Id*. The messages do not say anything about Ms. Ellis being the pilot of the helicopter involved in the crash nor do they provide any evidence that could reasonably support that inference. Thus, Defendant's reliance on the screenshots serves only to show that he fabricated Ms. Ellis' involvement in the crash from whole cloth. Courts in Colorado have repeatedly explained that evidence indicating such fabrications by a defendant is independently sufficient to support a jury verdict on actual malice, let alone to survive an anti-SLAPP motion. *E.g.*, *Talley v. Time, Inc.*, 923 F.3d 878, 896 (10th Cir. 2019) (citing *St. Amant*); *Miles v. National Enquirer, Inc.*, 38 F. Supp. 2d 1226, 1229-30 (D. Colo. 1999) (citing *Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 318-19 (Colo. 1981) (en banc)); *Coomer v. Trump*, 552 P.3d at 592, ¶ 153.

22.     Despite lacking any evidence that Ms. Ellis was, in fact, the helicopter pilot involved in the crash, Defendant immediately began to engagement farm[10] to boost his social media metrics. Without any investigation or inquiry, including failure or refusal to attempt to contact Ms. Ellis or to scrutinize the veracity of the "credible sources" and "articles" Defendant

---

[10] "Engagement farming refers to manipulative strategies designed to artificially boost engagement metrics like likes, shares, and comments on social media platforms. Unlike authentic engagement, where users create content to foster meaningful interaction, engagement farming exploits algorithms to generate the appearance of popularity." https://www.isme.in/engagement-farming-prof-sriram-prabhakar/ (last accessed Aug. 18, 2025). Engagement farming relies on methods like controversial Posts, content recycling, mass interactions (using bots, etc.), and follow-for-follow schemes. While engagement farming is discouraged on X, it is a common practice employed by users like Defendant.

claims were trending,[11] he began publishing defamatory statements about Ms. Ellis beginning on January 30, 2025. *See* Def. Decl., 29; *see also* Exhibit 1, ¶¶ 7-9; Exhibits 2, 4, and 5. Defendant's engagement farming efforts demonstrate a motive other than truth for publishing lies about Ms. Ellis. Defendant admits to monetizing his X profile and user engagement increases a user's monetization.

23. Defendant touts himself as an ultra conservative truth teller and has transphobic themes throughout his X account. *See* Exhibit 14. Defendant saw the opportunity to pin this tragedy on a transgender individual and decided to run with it because he knew Ms. Ellis would be a controversial figure after President Trump blamed the crash on DEI and because transgender rights are a contentious issue with the current administration. Defendant's history of transphobic and anti-LGBTQ+ tweets shows he had an interest in adhering to a preconceived notion coupled with a motive other than truth. Defendant has a significant following from individuals who deem themselves ultra conservative and anti-LGBTQ+; therefore, it behooves him to post frequently in accordance with a preconceived storyline that anti-trans and anti-LGBTQ+.

24. In his Motion, Defendant makes much of the fact that other X users also published false statements linking Ms. Ellis to the crash. But Defendant never attests to having relied on any of those posts. On the contrary, he swears that he relied on the message from his anonymous "friend" as the basis for his false claims about Ms. Ellis being the helicopter pilot involved in the crash. So the fact that other people may have told similar lies is irrelevant, because actual malice is concerned, not with what a random member of the public might have understood from a survey of all posts on X, but rather with what was subjectively in the mind of the speaker at the time he made the false statement. And Defendant's own sworn declaration

---

[11] It is important to note that Defendant does not actually claim to have relied on the "sources" and "articles" he saw regarding Ms. Ellis.

establishes that he made the statement in response to a message that said nothing about Ms. Ellis in fact being the helicopter pilot involved in the crash.

25. Beyond that, Defendant's declaration does nothing to refute the circumstantial evidence Ms. Ellis has supplied showing actual malice. He identifies a litany of anonymous and facially unreliable X accounts as having made unsupported assertions about Ms. Ellis being involved in the crash. But Defendant's reliance on such facially unreliable sources (and their unsubstantiated claims) would be evidence of actual malice, not proof of its absence. *See St. Amant*, 390 U.S. at 731-32; *see also Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016); *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 190 (2d Cir. 2000); *Wells v. Liddy*, 186 F.3d 505, 542–43 (4th Cir. 1999); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017). And, in any event, Defendant merely identifies those "sources" as having published stories about Ms. Ellis; he never claims to have relied on them, which, again, means they cannot be relevant to the actual malice inquiry here.

26. Defendant's declaration also does nothing to negate his obvious motive to publish an incendiary story about a trans woman being involved in a major national tragedy. Defendant admits to making thousands of dollars every month based on his X activity, which is driven by user engagement. He monetizes his X profile. Drawing more attention to that profile, even on a non-monetized post, plainly serves that goal. Indeed, that is a central premise of engagement farming. Defendant does not—and cannot—deny that drawing users to his X profile via one post (even a non-monetized one) would help generate engagement with his other, monetized posts. A publisher's motive to generate attention for his profile by publishing a false and scandalous account is further evidence of actual malice.

27. Defendant has also subtly changed his account of how he supposedly learned of Ms. Ellis' alleged involvement. On January 31, 2025, Defendant attempted to pin the blame for the narrative on X user @FakeGayPolitics, whom Defendant singled out as being the initial account from whom he received information about Ms. Ellis. *See* Exhibit 6. But @FakeGayPolitics subsequently debunked that claim, with the help of X's Grok tool. *See* Exhibit 9. Now, however, Defendant claims he received the information from his unnamed "friend" who supposedly controls account @JackWallace888. Defendant's constant blame shifting provides further circumstantial evidence that could lead a jury to disbelieve his self-serving account that someone—anyone—besides him planted the idea that it was Ms. Ellis who piloted the helicopter involved in the crash.

28. Here, then, Ms. Ellis has more than enough evidence of actual malice to meet the low bar required to survive an anti-SLAPP motion. Defendant, by his own account, told 2.3 million people that Ms. Ellis was a terrorist and a mass murderer, based on a message from an unnamed source that did not contain any evidence supporting that contention; Defendant simply made it up. That is sufficient to create a jury issue on actual malice, but, if more were needed, Defendant's reliance on facially unreliable sources, his deliberate and immediate rush to fit the tragedy to his own, preconceived, anti-trans narrative, and his clear motive to lie so that he could cash-in on an especially controversial and scandalous narrative would supply it. *See St. Amant*, 390 U.S. at 732; *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 190 (2d Cir. 2000); *see also Wells v. Liddy*, 186 F.3d 505, 542–43 (4th Cir. 1999); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017); *Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) (noting a defendant's effort to make evidence conform to a preconceived story can be "powerful evidence" of malice); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 674-75 (W.D. Va. 2019);

*Eramo v. Rolling Stone, LLC*, 209 F. Supp. at 872 (W.D. Va. 2016); *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1361 (Colo. 1983); *Kuhn*, 637 P.2d at 319. The bottom line is that Ms. Ellis has shown at least a reasonable probability that, after discovery, she will have more than enough evidence to prove actual malice by clear and convincing evidence. *See L.S.S.*, 523 P.3d at ¶ 42; *see also* Coomer v. Trump, 552 P.3d 562, ¶ 77; *Rosenblum v. Budd*, 2023 COA 72, ¶ 24, 538 P.3d 354. And that is all that is required to overcome an anti-SLAPP motion, especially on actual malice, which is not usually amenable to summary disposition. *See id*.

      **c.**    **Ms. Ellis suffered actual damages as a result of Defendant's defamatory statements.**

29. The only other ground Defendant identifies for granting his Motion comes at the very end of his brief, where he suggests that Ms. Ellis cannot adequately prove damages. *See*Def. Decl. (ECF No. 16-6), ¶¶ 41-42. Ms. Ellis must only make a prima facie showing of actual damages, which includes emotional distress (e.g., shame, humiliation, anguish, diminished reputation, etc.). *See Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994). Due to the defamatory assaults against Ms. Ellis, she has endured significant emotional distress, financial losses, and various other damages as a direct result of Defendant's conduct. *See* Exhibit 1. After being involuntarily drawn into this rumor and subjected to worldwide media scrutiny, Ms. Ellis was forced to hire a private security detail to ensure the safety of her spouse and daughter. *See id.*, at ¶ 14. Ms. Ellis feared for her own safety, as well as the safety of her family members, and started seeing her therapist on a weekly basis when she was previously going every other week. *See id.*, at ¶¶ 13, 14, and 19. Ms. Ellis pays out of pocket for her therapy sessions as they are not covered by her insurance. *See id.*, at ¶ 19.

30. Despite the rigorous demands of maintaining civilian and military flight currency requirements, Ms. Ellis voluntarily "grounded" herself from civilian flying for several months

upon realizing that the stress she was experiencing could impact flight safety. *See id.*, at ¶ 20. Prior to Defendant's disparaging comments against her, Ms. Ellis consistently maintained her civilian flying credentials. However, she has only flown twice since being thrust into the public eye. *Id*. Breaks in aviation training and currency are costly and Ms. Ellis has had to pay for additional flight hours to rebuild her confidence before flying with a passenger on March 23, 2025. *Id.* Since that date, she has refrained from flying altogether, as the ongoing stress from this ordeal has adversely affected her well-being. *Id*. The diminished currency in Ms. Ellis' flying experience has significantly impaired her proficiency, a situation exacerbated by Defendant's damaging remarks regarding his mental stability, which now threaten both her civilian flying career and potential future opportunities in commercial aviation. *Id.*

31. Contrary to Defendant's claims, Ms. Ellis has not received any remuneration for her media engagements related to this tragedy. *See id.*, at ¶ 21. Rather, she has incurred personal expenses for numerous appearances, has devoted "hundreds of hours to defending herself" and addressing inquiries arising from these egregious falsehoods. *Id.* Additionally, Ms. Ellis has missed multiple workdays—utilizing sick leave to cope with the resultant stress—which has placed an additional burden on the team of engineers she manages. *Id.*

32. Seven months after the crash, Ms. Ellis' name remains inextricably linked to this tragedy, fostering animosity toward the transgender community at large. *See id.,* at ¶ 22. In incidents involving military or civilian aviation, Ms. Ellis is frequently referenced; for example, during a near miss on July 25, 2025, involving a regional Delta jet and a military B-52, individuals tagged Ms. Ellis in social media posts questioning her involvement that day. *Id*.

33. Ms. Ellis continues to receive online threats and vitriolic comments, leaving her in a state of apprehension regarding being labeled a "transgender terrorist" during public outings.

*See id.*, at 23. The loss of anonymity and the unwanted public scrutiny Ms. Ellis faces are direct consequences of Defendant's unfounded allegations concerning her involvement in the tragic crash over the Potomac River. *Id*. Ms. Ellis' reputation and identity have been irrevocably damaged, likely to haunt her forever. The ramifications of Defendant's actions will, in all likelihood, endure.

## IV.   CONCLUSION

34.    Ms. Ellis respectfully requests that the Court deny Defendant's special motion to dismiss because Ms. Ellis has made a prima facie evidentiary showing for her claim against Defendant. Further, Ms. Ellis respectfully requests all such other and further relief to which the Court deems her to be justly entitled.

Respectfully submitted this 18th day of August 2025.

                    Respectfully submitted,

                    /s/ Meg Phelan

                    Meg Phelan, SC78209
                    **Equality Legal Action Fund**
                    P.O. Box 81465
                    Lincoln, Nebraska 68501
                    (618) 680-0292
                    meg.phelan@equalityactionfund.org
                    *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to Defendant's Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 has been served on Defendant's counsel on this 18th day of August 2025, using the CM/ECF system, which will send notification of such filing to the following email addresses:

      Dan Ernst
      dan@ernstlegalgroup.com

      /s/ Meg Phelan
      Meg Phelan
      *Attorney for Plaintiff*