IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01115-STV

**JO ELLIS**, an individual,

    Plaintiff,

v.

**MATTHEW S. WALLACE**, an individual,

    Defendant.

---

**REPLY IN SUPPORT OF MATTHEW S. WALLACE'S
SPECIAL MOTION TO DISMISS, PURSUANT TO C.R.S. § 13-20-1101**

---

Defendant Matthew S. Wallace, through undersigned counsel, hereby submits this Reply in support of anti-SLAPP Special Motion to Dismiss ("SMTD") along with his contemporaneously filed Declaration (attached hereto as **Exhibit AA** and incorporated in its entirety, ¶¶ 1-24, by this reference) to support Defendant's request that this Honorable Court dismiss Plaintiff's claims with prejudice and award Plaintiff his attorney fees pursuant to C.R.S. § 13-20-1101(3),(4) as follows:

**I.**    <u>**Plaintiff Stipulates to the First Step in Analyzing a Colorado anti-SLAPP motion**</u>

Mr. Wallace's SMTD establishes beyond dispute that this case arises out of his "right to discuss matters of public concern." *See* Plaintiff's Response to SMTD ("Resp."), ¶ 1; *see also* Resp. ¶ 12 ("For purposes of Defendant's Motion, Plaintiff stipulates that the anti-SLAPP statute applies because Defendant's false and defamatory statements concerned a public issue—the United States' first midair collision in 16 years, resulting in the tragic loss of 67 lives. *See* C.R.S. § 13-20-1101(3)(a)."). Notwithstanding Plaintiff's stipulation, the SMTD taken on its own, makes it clear through evidence and argument that Defendant's challenged statements are, each and all, expressions of his first-amendment

1

right to speak on public issues in a public forum. *See* C.R.S. § 13-20-1101(2)(a)(III); *see also* SMTD, Dkt.#16, § A, "ELLIS'S CLAIMS ARE SUBJECT TO THE ANTI-SLAPP STATUTE," pp.10-11; *see also* Declaration of Defendant in Support of SMTD ("Decl. SMTD"), Dkt.#16-6, ¶ 8 ("these issues [*e.g.*, the negative results of DEI-based hiring of pilots; gender dysphoria and its comorbidities' contemporary medical and psychological treatments' connection to depression, perceptions of persecution, and anti-social behavior – including "trans terror attacks"; forced speech against conscience (a.k.a. "misgendering")] were being widely debated"), ¶ 31 ("By the time I heard about the story… the name Jo Ellis had more than 80,000 posts on X alone"), ¶ 32 ("There were also more than a dozen articles in commercial newspapers and magazines stating that Jo Ellis was the pilot."). In short, Plaintiff is suing Matthew Wallace for exercising his liberty to speak his conscience in public in a manner that Plaintiff and her attorneys at Equality Legal Action Fund, their financiers, media advocates and co-idealogues object to as "bigoted" and punishable "hate".

## II. Second Step: Plaintiff Has Not Established a "Reasonable Likelihood" of Prevailing on a Defamation Claim

### A. Expressions of opinion on matters of policy and conscience are immune from liability.

Mr. Wallace is being sued by Plaintiff for exercising his freedom of speech and freedom of conscience to think and speak his mind in ways that Plaintiff Jo Ellis and her attorneys wish to impose liability. Plaintiff's Complaint claims a legal right to impose liability on Defendant for proliferating "transphobic" (Complaint ¶ 2) opinions about "trans-terror attacks" (Complaint ¶¶ 20, 25) and other policy matters related to transgenderism including but not limited to "misgendering" (Complaint ¶35). *See also* Complaint ¶ 36 ("Defendant added his own transphobic argument that transgender individuals always carry out school shootings and other terror attacks."); *see also* "Kelly Loving Act" HB25-1312, (Colorado Statute, 2025); *see also* Minnesota Law banning "conversion therapy"; *see also* various controversies surrounding "censorship" and "cancellation" of books in schools and amazon online book market. Mr.

2

Wallace's statements regarding and related to the practical effects of DEI policies including their possible contribution to an increase of professional malpractice in industries, fields, commercial and other enterprises that adopt such policies; gender dysphoria and its various legitimate and illegitimate treatments, related pathologies, ideological tropes (*e.g.*, fear of ongoing "genocide" against transpersons) and correlated anti-social behaviors; and other "transphobic" opinions, may be deplorable to Jo Ellis, but they are not actionable no matter how much offence and emotional distress they cause Plaintiff. *See Lawson v. Stow*, 2014 COA 26, ¶¶ 30-31("Statements of pure opinion are constitutionally protected — that is, they are not actionable defamation … [citations]"). The same is true of Mr. Wallace's thoughts regarding the connection between "gender dysphoria" and violent terrorist attacks. *See* Complaint ¶¶ 2, 3, 25.

### B. Defendant did not "lie to millions" and Plaintiff's Response fails to establish he lied.

The Response repeats as a mantra the claim that Defendant "lied" when he published the challenged statements identified in the Complaint. However, this claim is unsupported by either evidence or logic. Plaintiff does not dispute that to prevail on her claim of defamation in this case she must prove, by clear and convincing evidence, that Mr. Wallace had "actual malice" – that is, that he knew his published statements were false at the time he made them (or published them in reckless disregard of his strong suspicion that they were not true). *See Lawson v. Stow*, 2014 COA 26, ¶ 18 ("Where a statement relates to a matter of public concern, the speaker's communication is subject to a qualified privilege. … [Plaintiff] is subject to heightened burdens of proof. These are: (1) the defamed party must prove the falsity of the statement by clear and convincing evidence, rather than by a mere preponderance; (2) the defamed party must prove that the speaker published the statement with actual malice — that is, with actual knowledge that the statement was false or with reckless disregard for whether the statement was true; and (3) the defamed party must establish actual damages to maintain the action, even if the statement is defamatory per se."); *see also* Resp., ¶ 14 (*citing Coomer v. Salem Media of Colo.* 2025, COA 2, ¶ 22);

Resp. ¶ 15 (stipulating that to prevail in her claim for defamation, Plaintiff must produce clear and convincing evidence of "actual malice" at trial).  Each of these three elements must be proved by clear and convincing evidence. *See Lewis v. McGraw-Hill Broad. Co.,* 832 P.2d 1118, 1121 (Colo. App. 1992).

Plaintiff has manifestly failed to meet the burden of proof necessary to withstand Defendant's motion. Plaintiff has not shown in the Response, nor the affidavit filed therewith, any facts to support anything beyond speculation, let alone "a reasonable likelihood," that Mr. Wallace was the first to publish the claim that Jo Ellis was the helicopter pilot in question and that he <u>lied</u> when he published the (admittedly) false statements identifying Plaintiff as the pilot in the fatal crash. Plaintiff's failure to meet her burden to withstand the SMTD is all the more manifest given that the burden of the heightened "clear and convincing" standard must also be applied to plaintiff's burden at the anti-SLAPP's second step of analysis. *See L.S.S. v. S.A.P.*, 2022 COA 123, ¶¶ 42-43 ("If a Plaintiff is pursuing a defamation claim that will ultimately require proof of actual malice by clear and convincing evidence, to survive an anti-SLAPP motion, the plaintiff must establish a probability that they will be able to produce clear and convincing evidence of actual malice… [this] is also consistent with Colorado cases applying the clear and convincing evidence standard at the summary judgment stage. *See DiLeo v. Koltnow*, 200 Colo. 119, 125-26, 613 P.2d 318, 323 (1980)".); *see also Creekside Endodontics, LLC v. Sullivan,* 2022 COA 145, ¶¶ 30-32 (rejecting the "minimal merits" test touted by Plaintiff Ellis (*see* Resp. ¶ 13), and holding as follows:

> The parties disagree over the meaning of "reasonable likelihood" in this specific context — namely, where the defamatory statements involve a matter of public concern. Plaintiffs urge us to adopt the district court's reasoning; under that rubric, we must deny a special motion to dismiss if Plaintiffs' claim has "'minimal merit' and . . . there is a 'reasonable likelihood' they will prevail." Sullivan, by contrast, argues that Plaintiffs must show, by clear and convincing evidence, that they have a reasonable likelihood of prevailing at trial.
>
> Another division of this court addressed this precise issue in *L.S.S*. Drawing on California cases interpreting a substantively identical anti-SLAPP statute, Colorado cases applying the clear and convincing standard at summary judgment, and a balancing of the interests implicated by the statute, the division concluded that the heightened standard applied. *L.S.S.*, ¶¶ 42-44. Accordingly, it held that in order to

withstand a special motion to dismiss where a showing of actual malice will be required at trial, a plaintiff must establish a probability that they will be able to produce clear and convincing evidence of actual malice at trial. *Id.* at ¶ 41.

We agree with the reasoning and holding of the L.S.S. division and therefore adopt its reasoning.).

Defendant's Declaration filed with his anti-SLAPP motion (Dkt.#16-6) offers documentary evidence that explains and support his sworn testimony that <u>he did not lie</u>, that Mr. Wallace honestly believed each of the challenged statements that are the subject of Plaintiff's Complaint. *See* Decl. SMTD, ¶¶ 9, 18-27, and ¶¶ 10-17, 28-32. These challenged statements include statements of political opinion that are absolutely immune from liability and true statements of fact (for example the claim identified at Complaint ¶ 18, that the erratic "flight pattern of the Black Hawk helicopter does not look normal at all…"), but they also include the admittedly false claim that Jo Ellis was the Black Hawk helicopter pilot that crashed into American Airlines flight 5342. Mr. Wallace explains in his Declaration why he honestly believed that Jo Ellis was the pilot. *See e.g.,* Decl. SMTD, ¶ 4 and its **Exhibits A-H;** *see also Id.* ¶ 30 (a day before Wallace ever posted on the crash, Grok was telling anyone who searched the helicopter/AA5342 collision that Jo Ellis was piloting the helicopter in that fatal crash.) and **Exhibit X**.

Plaintiff's Response fails to provide any factual evidence that actually supports her repeated assertion that Mr. Wallace "fabricated Ms. Ellis' involvement in the crash from whole cloth." ¶ 21 (*offering* the text messages between Mr. Wallace and his friend in **Plaintiff's Exhibit 2** (Dkt.#22-2) as if it supported the accusation of "fabrication"). But those text messages, as explained and evidenced in Defendant's SMTD and Declaration filed therewith, occurred **on January 31, 2025 after midnight** (Central Standard Time). *See* Decl. SMTD, ¶ 28; *see also* **Plaintiff's Exhibit 2**, which is time-stamped <u>12:06 a.m., January 31, 2025</u>, despite Resp. ¶ 8 falsely stating that this post was made "[j]ust hours after the midair collision" on January 29, 2025).

5

Plaintiff does not dispute that Defendant's post of a picture of Jo Ellis along with the caption "MY BROTHER @JackWallace888 JUST FOUND OUT THE HELICOPTER PILOT WAS A TRANSGENDER" was the first post Defendant made that referred to Plaintiff. *See* Complaint, ¶ 20 ("While the exact time of the first post is unknown…"); *see also* Resp., ¶ 8 ("his initial viral post") (*citing* **Plaintiff's Exhibit 2**); *see also* **Plaintiff's Exhibit 15** (Dkt.#22-15), which is offered to support Resp. ¶ 8's speculation that "Defendant's comment was posted at approximately 4:06 p.m. MST on January 30, 2025" despite **Plaintiff's Exhibit 15** being time-stamped 6:30 a.m., January 31, 2025. In addition, the SMTD and its Declaration also establish that the time and date of Wallace's first post about Plaintiff was around midnight on January 31, 2025. *See* Decl. SMTD, ¶ 28 and its **Exhibit Y** (Dkt.#16-24). By the time of Wallace's first post (approximately midnight on January 31, 2025) the name Jo Ellis had more than 80,000 posts on X (formerly Twitter) alone, and Grok had been telling people for more than 16 hours that Joe Ellis was the pilot in question. *See* Decl. SMTD, ¶ 30 and its **Exhibit X** (Dkt.#16-23).

Yet, despite all this evidence (including the time-stamps on Plaintiff's own Exhibits) Plaintiff brings this suit against Mr. Wallace as if he were the first to make an implication about Jo Ellis' being the pilot of the helicopter. The Response utterly fails to account for the myriad pieces of testimonial and documentary evidence provided by Defendant in his Declaration that establish there were thousands of social media posts, magazine articles, and news organization stories stating that Jo Ellis was the pilot in question, which were published prior to Wallace's first post on the matter at approximately midnight on January 31, 2025. *See e.g.,* Decl. Wallace, ¶¶ 10-17 and their respective **Exhibits L-W**; *see also Id.,* ¶ 30 (showing that more than 16 hours before Defendant's first post, Grok was telling anyone who searched it that Jo Ellis was the pilot in question).

The Response fails to provide any factual support for a timeline of events that plausibly implicates Defendant as the originator of the notion that Jo Ellis was the pilot in question. That is, Plaintiff has failed to establish even a "prima facie" factual basis for a central element of Plaintiff's claim for defamation.

6

The Response fails to offer any evidence that supports more than a speculation that Plaintiff was the originator of the false claim that Jo Ellis was the pilot and that Plaintiff "fabricated out of whole cloth" that claim. As is undisputed, in order to prevail on her claim for defamation, Plaintiff must prove by clear and convincing evidence that Defendant had "actual malice" when he implied that Jo Ellis was the pilot in question. Plaintiff's Response to the SMTD has manifestly failed to establish even a plausible claim that Wallace intentionally lied (or even suspected it wasn't true) when he stated that Jo Ellis was the pilot involved in the fatal crash – Thus, *a fortiori,* the Plaintiff has failed to establish a "reasonable likelihood" of prevailing on her defamation claim through an offer of clear and convincing evidence that proves Defendant's actual malice.  Plaintiff's timeline doesn't even rise to the level of speculation – and the undisputed evidence presented in Wallace's motion and attached Declaration renders it **<u>impossible that he was the originator of the mistake naming Jo Ellis as the pilot</u>**.

Plaintiff's claim is beyond implausible. It should be dismissed. But what is worse, Plaintiff offers in her Response "evidence" of posts <u>that were not made by Defendant Wallace</u>, never mentioned in the Complaint, nor have any reference or anything whatsoever to do with Defendant Wallace, as if the statements in these posts implicate Wallace.  *See* **Plaintiff's Exhibits 5, 9**, **10** to Response, and Defendant's Declaration in support of this Reply ("Reply Decl.", attached hereto as **Exhibit AA**) stating that he does not post on TikTok, does not publish X posts under the name "Random MAGA" and that Plaintiff is falsely attributing posts to him in **Exhibits 5, 9, 10**, on no foundation whatsoever. *See* Exhibit AA, ¶ 22.

Irrespective of the false nature of these attributions by Plaintiff, they do nothing to support her allegation that Wallace posted about Jo Ellis "Just hours" after the collision on January 29, 2025, 6:47 p.m. MST.  **Plaintiff's Exhibit 5** indicates the post was published on January 31, 2025 ("1-31"). **Plaintiff's Exhibit 9** identifies an account named "Random MAGA" as the original source of the claim that Jo Ellis was the pilot in a post dated January 30, 2025 (with the time-stamp cut-off) – Defendant has

7

nothing to do with this "Random MAGA" account and there is no explanation by Plaintiff of why it's even offered into evidence. *See* Reply Decl., **Exhibit AA**, ¶ 22. The inclusion of **Plaintiff's Exhibit 10** is baffling because it actually undermines Plaintiff's allegation that Defendant "fabricated" the story in that it shows Grok was identifying Jo Ellis as the pilot prior to Wallace's first post referring to Ellis.

In addition to attributing publications not made by Defendant to him, Jo Ellis manufactures statements not made by him to Defendant. *See* Response ¶ 9 (asserting that Defendant "accused her of participating in 'another trans terror attack.'") (*citing* **Plaintiff's Exhibit 4**). In the X-post reproduced in **Plaintiff's Exhibit 4**, Defendant writes: "A transgender Black Hawk helicopter pilot for the military wrote a long letter about 'Gender Dysphoria' and depression 1 day before the fatal crash! What happened may have been another trans terror attack…". That is NOT an accusation. Wallace wrote, "What happened **may have been** another trans terror attack…" that is a speculation not an *accusation*. Additionally, Plaintiff offers no facts into evidence to support the notion that Wallace knew it was not a 'trans terror attack' when he issued the speculation that it *may have been*.

It is undisputed that a black hawk helicopter crashed into American Airlines flight 5342 at Dulles airport on January 29, 2025 at 6:48 p.m., MST. Defendant provides sworn testimony and documentary evidence of the timing of his first publication that implies Jo Ellis was the helicopter pilot in that crash. *See* Decl. SMTD, ¶ 28 and its **Exhibit Y** (establishing that the publication was made soon after midnight on January 31, 2025, CST). Plaintiff "disputes" the timing of Defendant's first publication simply by asserting that the publication was made "at approximately 4:06 p.m. MST on January 30, 2025." Resp. ¶ 8 (*citing* allegations of the Complaint and **Plaintiff's Exhibit 15**). But Plaintiff's Exhibit 15 is itself dated **6:30 a.m. on January 31, 2025**. That document provides no factual support for Plaintiff's "dispute" regarding the timing of Defendant Wallace's first publication referring to Jo Ellis. But, what's more perhaps, for hours prior to "approximately 4:06 p.m. MST on January 30, 2025" (Resp. ¶ 8) the internet was flooded with posts and comments stating that Jo Ellis was the pilot in question. *See e.g.,* Decl. SMTD,

8

¶ 10 (**Exhibit L**, time-stamped 8:39 a.m. CST, January 30, 2025, naming Jo Ellis as the pilot); *see also* SMTD, ¶ 11 (**Exhibit M**, time-stamped 9:02 a.m. CST, January 30, 2025, naming Jo Ellis); *id.* ¶ 12 (**Exhibit N,** 10:10 a.m.); *id.* ¶ 13 (11:46 a.m.); *id.* ¶ 14 (2:22 p.m.); *id.* ¶ 15 (2:51 p.m.); *id.* ¶ 16 (2:55 p.m.); *id.* ¶ 17 (3:45 p.m.). So, even if we were to assume *arguendo* that Plaintiff's alleged timing of Defendant's publication at approximately 4:06 p.m. MST (5:06 p.m. CST) were correct – **note that there is no evidence offered (let alone clear and convincing evidence) to support this** – Mr. Wallace had many (tens of thousands) of reasons to believe that Jo Ellis was the pilot in question at the time he made his publication. That is reason enough to conclude that Plaintiff has failed to meet the burden of proof required to overcome Defendant's motion: "a reasonable likelihood" of proving Defendant's **actual malice** at the time of his publishing the implication that Jo Ellis was the pilot in the crash. *See McIntyre v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008) ("actual malice -- that is, with actual knowledge that the statement is false or with reckless disregard for whether the statement is true; proof that the defendant was negligent in ascertaining the truth of the statement is insufficient.") (citing *Diversified Mgmt. v. Denver Post*, 653 P.2d 1103, 1105-06 (Colo. 1982) ("We reached that result because we believed that a simple negligence rule would have a chilling effect on the press that would be more harmful to the public interest than the possibility that a defamed private individual would go uncompensated. In order to honor the commitment to robust debate embodied in the first amendment and to ensure sufficient scope for first amendment values, we chose to extend constitutional protection to any discussion involving matters of public concern, irrespective of the notoriety or anonymity of those involved.") (*adopting* definition of "reckless disregard" of *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). No evidence of Defendant's "serious doubt" was provided by Plaintiff's Response.  Instead, Plaintiff attempts (and fails) to support a conclusion that

9

Defendant did not conduct the type of investigation that a reasonable person would have made before publishing that she was the pilot in question. In any case, that conclusion, even if it were supported by sufficient evidence in the Response – it is not – would only establish "negligence" which is not enough to meet Plaintiff's burden of establishing "actual malice"; and hence is insufficient to overcome Wallace's anti-SLAPP motion.[1]

In short, in the second step of the anti-SLAPP analysis, it is Plaintiff who has to make a showing – and Plaintiff has manifestly failed to make the required showing. The Response has not shown a "reasonable likelihood," by factual evidence, that Defendant's subjective mental state was one of knowing that Plaintiff was not the pilot because he "fabricated the story out of whole cloth," nor has Plaintiff shown that Wallace had a "subjective awareness of probable falsity" (*Gertz v. Welch*, 418 U.S. 323, 334 n.6.) because he knew the tens of thousands of sources for that story that he relied upon were all unreliable and nevertheless made no attempt to verify their information (*Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 157-59 (1967)). Plaintiff's assertion that Wallace originated/fabricated the story in question is unsupported by Plaintiff's offers of evidence; nor has Plaintiff made a showing of evidence constituting a "reasonable

---

[1] Plaintiff inappositely cites *Talley v. Time, Inc.*, 923 F.3d 878, 896-97 (10th Cir. 2019) to quote the half-sentence, "obvious reasons to doubt the veracity of the informant of the accuracy of his reports", a more complete quotation is illuminating:

> A plaintiff does not create a jury question of actual malice by showing that a publisher failed to investigate before publishing. *Gertz*, 418 U.S. at 332; *St. Amant*, 390 U.S. at 731; *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 84-85, 88 S. Ct. 197, 19 L. Ed. 2d 248 (1967) (per curiam); *New York Times*, 376 U.S. at 287; *Revell v. Hoffman*, 309 F.3d 1228, 1233 (10th Cir. 2002) .... Actual malice may be found when a publisher had a "subjective awareness of probable falsity." *Gertz*, 418 U.S. at 334 n.6. For example, evidence that a publisher knew its sources were unreliable but made no attempt to verify their information, *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 157-59, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967), or that a publisher knew it was publishing contested allegations but deliberately ignored sources or information that might reveal what actually happened, *Harte-Hanks*, 491 U.S. at 690, may establish actual malice. Other examples include "a story [that] is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call"; circumstances where the published statements "are so inherently improbable that only a reckless man would have put them in circulation"; or situations "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732.

likelihood" of proving that Wallace seriously doubted the veracity of the tens of thousands of reports claiming Jo Ellis was the pilot published before he ever commented on the matter. Plaintiff has not met her burden under the Colorado anti-SLAPP law, and therefore her defamation claim must be dismissed.

### C. The Response fails to make a prima-facie showing that Defendant's statements caused Plaintiff damage significant enough to justify a federal case in Diversity.

Plaintiff's Response fails to even address or provide any facts to dispute Defendant Wallace's evidence that his comments on the story constituted less than 1% of the traffic related to the discussion of Jo Ellis' being the helicopter pilot who crashed into a commercial airliner on January 29, 2025 at around 7:00 p.m. MST. *See* Decl. SMTD, ¶ 31. The total duration from the beginning of the circulation of the claim that Jo Ellis was the pilot of the helicopter in the crash (*i.e.*, according to Plaintiff from "approximately 4:06 p.m. MST, January 30, 2025") until the "proof of life" that Plaintiff published to clear up the confusion – was **_less than 24 hours_**. Nothing Plaintiff has provided as evidence in her Response has established a "reasonable likelihood" of proving (by clear and convincing evidence) that she incurred $75,000.00 or more of damages in that twenty-four hour period.

All the more so, Plaintiff has failed to establish a "reasonable likelihood" of proving by clear and convincing evidence that she incurred **$7,500,000.00** in damages during that 24-hour period. That amount of damages is what Plaintiff must establish (given the undisputed evidence that Wallace's publications accounted for only 1% of the traffic related to the story of Plaintiff's being the pilot in question) in order to sufficiently establish the damages element of her defamation claim to withstand Defendant's SMTD. Plaintiff has failed to sufficiently establish this element of her claim as well. Therefore Plaintiff's claim for defamation must be dismissed pursuant to C.R.S. § 13-20-1101(3).

### CONCLUSION

It is undisputed that the statements for which Plaintiff has sued Defendant are protected speech pursuant to C.R.S. § 13-20-1101. It is also clear that Plaintiff has failed to establish a

11

"reasonable likelihood" of proving by clear and convincing evidence the elements of actual malice and damages as is required in the second step of analysis of the anti-SLAPP Special Motion against Plaintiff's defamation claim against Mr. Wallace's qualifiedly immune statements. Based upon the SMTD, the exhibits attached thereto, the Declaration of Defendant filed therewith and its attached exhibits, along with the above Reply and the concurrently filed Declaration in support of this Reply, Defendant Matthew S. Wallace respectfully requests this Court dismiss with prejudice Plaintiff's claims pursuant to C.R.S. § 13-20-1101.

RESPECTFULLY SUBMITTED on this September 1, 2025,

By: _/s/Dan Ernst_____
Dan Ernst, #53438
217 E. 7th Ave.
Denver, CO 80203
(720) 798-3667
dan@ernstlegalgroup.com
*Attorney for Defendant Wallace*

---

### CERTIFICATE OF SERVICE

The undersigned certifies that on September 1, 2025, a copy of the above anti-SLAPP special motion to dismiss and its attached declarations were served on counsel for Defendant by email through the Colorado Court's E-Filing Service, ICCES at the following:

*Attorneys for Plaintiff*
Meg Phelan, SC Bar No. 78209
EQUALITY LEGAL ACTION FUND
P.O. Box 81465
Lincoln, Nebraska 68501
(618) 680-0292
meg.phelan@equalityactionfund.org

By:   ERNST LEGAL GROUP, LLC

___/s/Dan Ernst_____

12

*Attorney for Defendant Wallace*