**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO DISTRICT**

Civil Action No. 1:25-cv-01115-STV

JO ELLIS,

          Plaintiff,

v.

MATTHEW S. WALLACE,

          Defendant.

---

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND
SPECIAL MOTION TO DISMISS PURSUANT TO
COLORADO REVISED STATUTES § 13-20-1101**

---

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.C.R.P."), Plaintiff Jo Ellis ("Ellis") respectfully moves this Court to dismiss Defendant Matthew S. Wallace's ("Defendant") Counterclaim for failure to state a claim upon which relief can be granted. Because this suit arises out of constitutionally protected speech, and because Defendant cannot show a reasonable likelihood of prevailing on his claim, Plaintiff also moves this Court for special dismissal of Defendant's Counterclaim pursuant to Colorado Revised Statutes ("C.R.S.") § 13-20-1101. As grounds for these motions, Plaintiff directs the Court to the supporting points and authorities below. For the foregoing reasons and those that may be presented at a hearing on this matter, this Court should grant Plaintiff's Motion and dismiss Defendant's Counterclaim with prejudice, awarding Plaintiff attorney's fees and costs incurred pursuant to C.R.S. § 13-20-1101(4)(a), together with such other relief the Court deems just and proper.

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1, Counsel have conferred and Defendant opposes this motion.

1

**INTRODUCTION**

Plaintiff brought this action based solely on Defendant's own public statements made to his 2.3 million followers on X, as well as millions of other X users, who saw Defendant's posts falsely claiming that Plaintiff was a "trans terrorist," who intentionally crashed an Army UH-60L Black Hawk helicopter into an airliner over the Potomac River and killed 67 people on January 29, 2025. *See* Complaint (ECF No. 1), ¶ 2. Defendant's Counterclaim contains a single cause of action for defamation, claiming that, after filing her "frivolous" Complaint, Plaintiff made allegations about Defendant that "were designed to harm Wallace's reputation and subject him to public contempt, disgrace, ridicule, or attack." Counterclaim (ECF No. 58) at ¶¶ 11, 34. Defendant further contends that Plaintiff's statements were not privileged because they were made with "actual malice." Counterclaim at ¶ 36. While Plaintiff's statements referred to Defendant, they were substantially true and, therefore, not defamatory. Moreover, a litigant's statements, even if defamatory, when made in the course of or in preparation for a legal proceeding, cannot be the basis of a tort claim so long as the statements are related to the litigation. Additionally, for the reasons discussed herein, Defendant's claims cannot withstand scrutiny under F.R.C.P. Rule 12(b)(6) and/or C.R.S. § 13-20-1101. Accordingly, the Court should dismiss Defendant's Counterclaim, with prejudice.

**LEGAL STANDARDS**

**1.     Motions to dismiss under F.R.C.P. Rule 12(b)(6)**

When determining whether a counterclaim should be dismissed for failure to state a claim, the court applies the same standards as applied in considering a motion to dismiss a complaint under the F.R.C.P. Rule 12(b)(6). *See Otter Prod., LLC v. Treefrog Devs., Inc.*, No. 11-CV-02180-WJM-KMT, 2012 WL 4478951, at *2 (D. Colo. Sept. 28, 2012). Under F.R.C.P.

2

12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint also must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *See Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *see also Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

A Rule 12(b)(6) motion tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations to be true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Circ. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "To survive a motion to dismiss under Rule 12(b)(6) [...], a complaint must allege enough factual matter that, taken as true, makes the plaintiff's 'claim to relief [...] plausible on its face.'" *In re Frontier Airlines Litigation*, 559 F.Supp.3d 1146, 1153 (D. Colo. 2021) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Iqbal*, 556 U.S. at 679). "Thus, even though modern rules of

pleading are somewhat forgiving, a complaint must still contain either direct or inferential

allegations respecting all the material elements necessary to sustain recovery under some viable

legal theory." *In re Frontier*, 559 F.Supp.3d at 1153 (citations omitted). "Allegations that are

purely conclusory are not sufficient to state a claim for relief." *GN Netsome, Inc. v. Callpod, Inc.*,

2012 WL 4086530, at *2 (D. Colo. Sept. 17, 2012) (citing *Twombly*, 550 U.S. at 555).

**2.       Special motions to dismiss pursuant to C.R.S. 13-20-1101(3)**

Anti-SLAPP laws serve a limited purpose–to enable courts to dismiss frivolous cases

brought with the intent to chill one's constitutional rights. *See FilmOn.com Inc. v. DoubleVerify

Inc.*, 439 P.3d 1156, 1160 (Cal. 2019); *see also Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016)

(noting the core-goal of the anti-SLAPP statute is to weed out "meritless claims"). The Colorado

anti-SLAPP statute provides, "[t]he general assembly finds and declares that it is in the public

interest to encourage continued participation in matters of public significance and that this

participation should not be chilled through abuse of the judicial process." C.R.S. §

13-20-1101(1)(a). An anti-SLAPP special motion to dismiss is subject to a unique standard: a

court must dismiss a complaint "unless the court determines that the plaintiff has established that

there is a reasonable likelihood that the plaintiff will prevail on the claim." *Id.* at §

13-20-1101(3)(a). A defendant prevailing on a special motion to dismiss is "entitled to recover

[her] attorney fees and costs." *Id.* at § 13-20-1101(4)(a).

To avoid any conflict with the Federal Rules, special motions to dismiss mounting a *legal*

challenge should be analyzed under Rule 12(b)(6) standards, whereas motions to dismiss

mounting a *factual* challenge should be analyzed under Rule 56 standards. *Moreau v. United

States Olympic & Paralympic Comm.*, 2022 WL 17081329, at *7 (D. Colo. 2022). *Moreau* then

requires application of the anti-SLAPP statute's two-step burden-shifting framework. First,

courts must determine whether the statute applies. If a defendant makes a prima facie showing on this step, the burden shifts to the plaintiff who must demonstrate a "reasonable likelihood of prevailing on the claim." C.R.S. § 13-20-1101(3)(a); *see Stevens v. Mulay*, No. 19-cv-01675, 2021 WL 1153059, at *3 (D. Colo. Mar. 26, 2021).

## ARGUMENT

Defendant's Counterclaim must be dismissed under Rule 12(b)(6) and/or under Colorado's anti-SLAPP statute, either of which is an adequate independent basis to resolve this suit. Plaintiff's allegedly defamatory statements are absolutely privileged as they are related to and in furtherance of litigation. Regardless of privilege, Defendant has failed to plead falsity, actual malice, and actual damages. Colorado's anti-SLAPP statute clearly applies to Defendant's Counterclaim since it applies to the underlying Complaint that precipitated this suit. Thus, because Defendant has failed to carry his pleading burden *and* is unlikely to succeed on the merits of his claim, his Counterclaim must be dismissed.

**3.    Plaintiff's statements are absolutely privileged.**

Defendant's Counterclaim is based solely upon litigation-related statements by Plaintiff, which are absolutely privileged and, therefore, not actionable. This is true even if the statements "are false or defamatory and made with knowledge of their falsity." *Dep't of Admin. v. State Pers. Bd.*, 703 P.2d 595, 597-98 (Colo. App. 1985) (citing Restatement (Second) of Torts §§ 587-88 (A.L.I. 1977)). "[C]ommunications made in the course of judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of inquiry." *MacLarty v. Whiteford*, 496 P.2d 1071, 1072 (Colo. App. 1972); *see also Merrick v. Burns, Wall, Smith & Mueller, P.C.*, 43 P.3d 712, 714 (Colo. App. 2001) ("Communications preliminary to a judicial proceeding are protected by

absolute immunity only if they have some relation to a proceeding that is actually contemplated in good faith."). The Colorado Court of Appeals has noted that there is a public interest "in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation" and is made "paramount to the right of the individual to a legal remedy where he has been wronged thereby." *MacLarty*, 496 P.2d at 1072.

"The purpose of this privilege [...] is to afford litigants the utmost freedom to access the courts to preserve and defend their rights." *Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates*, 712 P.2d 1024, 1027 (Colo. Ct. App. 1985) (citing *Smith v. Hatch*, 271 Cal.App.2d 39, 76 (Cal. Ct. App. 1969)); *see also Killmer, Lane & Newman, LLP v. BKP, Inc.*, 535 P.3d 91, 2023 CO 47, ¶ 20. "To be privileged, the allegedly defamatory matter must have been made in reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." *Id.* (citing Restatement (Second) of Torts § 586 comment C (1977); *Sussman v. Damian*, 355 So.2d 809 (Fla. App. Ct. 1977)).In 2023, the Colorado Supreme Court expanded the litigation privilege to encompass statements made to the media when made in furtherance of litigation. *See BKP*, 535 P.3d 91, ¶ 47. "The pertinency required is not technical legal relevancy, but rather a general frame of reference and relation to the subject matter of the litigation." *Club Valencia Homeowners Ass'n, Inc.*, 712 P.2d at 1027 (citing *Smith*, 271 Cal.App.2d at 76). "Thus, the privilege embraces anything that possibly may be relevant." *Id.* (citing *Feldman v. Bernham*, 6 App. Div.2d 498, 179 N.Y.S.2d 881 (1958). "All doubt should be resolved in favor of its relevancy or pertinency." *Id.*

By ignoring well-established law and taking Plaintiff's comments during a comedy routine and two podcasts out of context, Defendant claims that Plaintiff has allegedly defamed him through the "false" claim that Defendant was the "'the first one' to post Ellis' *likeness* in

6

connection" with the collision. Plaintiff also said she "believes" Defendant caused "the most damage." Defendant continues to focus on claims that he was the first to *name* Plaintiff in relation to this tragedy. However, whether or not Defendant was the first to mention Plaintiff is not relevant to whether or not he defamed her, and is not what Plaintiff stated when asked questions regarding this case. *See* Counterclaim, ¶ ¶ 22.b.-c. In fact, during two appearances–her "Kill Tony" debut and the podcast with Kim Congdon ("Congdon")–Plaintiff was careful to say that she was not sure if Defendant started the rumor and even corrected Congdon when she said Defendant "started the rumor" about Plaintiff committing a trans terror attack. *Id*. at ¶ ¶ 22.a. and 22.c. Plaintiff was simply responding to inquiries directly related to this litigation from three hosts who questioned her. Defendant is a public figure and his defamation against Plaintiff changed her ability to live a private life overnight. Questions related to Plaintiff clearly restated the theories articulated in her Complaint when prompted by questions from the shows' hosts. The allegedly defamatory statements on which Defendant's Counterclaim is based were made in Plaintiff's Complaint and in response to Defendant's anti-SLAPP motion. *See* Complaint, Pl. Decl., and Motion for Reconsideration, Att. 1 (ECF Nos. 22, 22-1, and 59-1).

Moreover, Defendant believes that he did not cause significant damage to Plaintiff's reputation because others had erroneously blamed her for the crash before he did. However, it is uncontroverted that Defendant has 2.3 million followers on X, and at least 4.8 million people viewed one of his three posts about Plaintiff. *See* Complaint, ¶ ¶ 13 and 25. Again, this is not relevant in relation to Plaintiff's comments about Defendant. Plaintiff specifically said she "believes" Defendant "caused the most damage" with his defamatory posts about her, which reached millions of views all over the world. Plaintiff has made these statements throughout the course of this litigation as they relate to her theory of the case. Plaintiff's recitation of this theory

7

on three occasions is clearly relevant to the subject matter of her litigation against Defendant. For all of these reasons and in accordance with Colorado common law, even if Plaintiff's statements were defamatory, they are protected by this absolute privilege. As Plaintiff's statements are absolutely privileged, Defendant has failed to state a claim upon which relief may be granted. Therefore, Defendant's Counterclaim should be dismissed with prejudice.

**4.       Plaintiff's statements are substantially true.**

Colorado law is settled that substantial truth is a complete and absolute defense to any defamation case. *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004); *see Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013); *see also Miles v. Ramsey*, 31 F. Supp. 2d 869, 875 (D. Colo. 1998). "In determining whether a challenged statement is substantially true, the inquiry should focus on how an average reader would read the statement." *Fry*, 408 P.3d at 849; *see Miles*, 31 F. Supp. 2d at 875-76. "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) (citation modified; citation omitted). The defendant in a defamation action need only show "the substance, the gist, the sting of the matter is true." *Gomba v. McLaughlin*, 180 Colo. 232, 236, 504 P.2d 337, 339 (1972). "The test is whether the challenged statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter." *Id*. (citing *Anderson v. Cramlet*, 789 F.2d 840, 843 (10th Cir. 1986) (applying Colorado law)); *see also Gomba*, 180 Colo. at 236, 504 P.2d at 339.

Plaintiff's first allegedly defamatory statements were made during a stand-up comedy routine at her "Kill Tony" debut, which was recorded on June 30, 2025, and aired on YouTube on July 14, 2025–14 days before Defendant filed his special motion to dismiss (ECF No. 16). *See* Counterclaim at ⸿ 22.a. As stated above in paragraph 3, Plaintiff articulated her theory that

Defendant was the first to tie her *likeness* to the rumor, and that Defendant "did the most, what we can determine, damage." Kill Tony #727: Joe Derosa + Tim Butterfly, at 1:22:05-1:22:12 (July 14, 2025).

Plaintiff's second statement was made on a podcast that aired on September 30, 2025. *See* Counterclaim at ¶ 22.b. During that podcast, host Landon Shroder ("Shroder"), stated, "A right-wing influencer named Matt Wallace [...] falsely identified you as the pilot in the January 29th crash." RVA Magazine Podcast: Jo Ellis Did Her Job. The Army Didn't. at 16:00 (Sept. 30, 2025). Shroder then called Defendant a derogatory name. *Id.* at 16:07. Before continuing, Plaintiff immediately corrected Shroder and said, "I did not call him any names, you did." *Id.* at 16:43. Then, Plaintiff discussed how the rumor about a transgender Blackhawk pilot flying the helicopter that collided with an airliner started trending, so people wanted to figure out who was involved. *Id.* at 18:50. Plaintiff said:

> And from what we can tell, Matt [Defendant] picked up on that and used a picture of me and the Smerconish article, and, um, kinda put it all together. And with his following, he had, I think, two and half million followers or something like that, *we believe* he did the most damage. It would not have had the legs it had if he hadn't posted about it.

*Id.* at 18:57 (emphasis added).

Plaintiff's third statement was made on a podcast that aired on January 12, 2026. Counterclaim at ¶ 22.c. In the last three minutes of the 48-minute podcast, Plaintiff responded to questions about the lawsuit from the host. The host asked if Plaintiff was "suing the United States," which Plaintiff denied. The Kim Congdon Takeover: Snaggle Chasers with Comedian Jo Ellis, at 45:46 (Jan. 12, 2026). Plaintiff said she was suing an "influencer," and the host said, "the one that started the rumor." *Id.* at 45:51. Plaintiff, again, corrected the host and stated, "I don't

9

know if he started it. He's the first one to tie my *likeness* to it […] he pushed it pretty hard and *we believe* he did the most damage." *Id.* at 45:57 (emphasis added).

The gist of Plaintiff's statements in these three instances is substantially true. Plaintiff made comments about Defendant being the first to associate her *likeness* with the crash, and a belief that Defendant inflicted the most harm upon Plaintiff's reputation by doing so. Plaintiff chose her words carefully and actually corrected the hosts who alleged that Defendant started the rumor about Plaintiff's association with the crash. Regardless of whether Defendant was the first or last to claim Plaintiff intentionally crashed a helicopter into an airline as part of a transgender terroristic murder-suicide plot, his posts were defamatory and did irreparable damage to Plaintiff's reputation. While Plaintiff used the words "first" and "most" when describing Defendant's defamatory conduct, an average reader or listener would understand that Defendant lied about Plaintiff being a transgender terrorist and, because he has 2.3 million followers, his defamatory posts significantly damaged Plaintiff's reputation and caused her to fear for her safety. The substance of those statements is true and Defendant cannot split hairs because he is being held accountable for his own outrageous conduct.

**5.    Defendant has insufficient evidence to establish a reasonable likelihood of success on his claim.**

In Colorado, defamation is "a communication holding an individual up to contempt or ridicule that causes the individual to incur injury or damage." *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994). To establish a claim for defamation based on a matter of public concern, a plaintiff must allege facts showing that the statement (1) was defamatory; (2) was materially false; (3) concerned the plaintiff; (4) was published to a third party; (5) was published with actual malice; and (6) caused actual or special damages, even if the statement is defamatory *per se*. *Brokers'*

10

*Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017); *see also Coomer v. Salem Media of Col., Inc.*, 565 P.3d 1133, 2025 COA 2, ¶ 22; *L.S.S. v. S.A.P.*, 523 P.3d 1280, ¶ 36 (Colo. App. 2022). Both the statement's falsity and actual malice on the part of the defendant must be proven *at trial* by clear and convincing evidence. *See L.S.S.* 523 P.3d at ¶ 36.

Defendant's single cause of action against Plaintiff must be dismissed pursuant to C.R.S. § 13-20-1101 because (1) the statements are not "materially false"; (2) the statements were not made with actual malice; and (3) Defendant cannot prove actual damages attributable to Plaintiff's statements. Although Plaintiff contends Defendant cannot satisfy multiple elements required for defamation, even if Defendant's claim fails to satisfy one requisite element, his claim must be dismissed.

Plaintiff previously stipulated that the anti-SLAPP statute applied to her claims against Defendant. *See* Pl. Resp. to anti-SLAPP Motion (ECF No. 22) at ¶ 12. Seeing as Plaintiff's allegedly defamatory statements referenced in Defendant's Counterclaim are directly related to Plaintiff's Complaint, there is no question that the anti-SLAPP statute applies to the Counterclaim as well. As such, this Court need only consider the second step of the anti-SLAPP analysis, wherein the Court asks whether there is a "reasonable likelihood that the plaintiff will prevail on the claim" by reviewing the pleadings and affidavits. C.R.S. § 13-20-1101(3)(a)-(b); *see Salazar v. Public Trust Institute,* 2022 COA 109M, ¶ 20. In making this assessment, the Court only looks to whether the plaintiff "has stated a legally sufficient claim and made a prima facie factual showing." *Baral*, 376 P.3d at 608.

**A.      Plaintiff's statements were not "materially false."**

At a minimum, a claim for defamation requires "the publication of a false statement of a derogatory nature." *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013). Whether a statement is defamatory is a question of law. *Id*. The lack of provability is also an absolute defense to a defamation claim. That is, statements that lend themselves to varying interpretations are insufficient for a defamation claim because they cannot be proved false. For example, theories, conjectures, expressive ideas, or "loose, figurative, or hyperbolic" language is not actionable because such language cannot "reasonably be interpreted as stating actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21-22 (1990); *see Brokers' Choice of Am.*, 861 F.3d at 1136; *see also Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10 (D.C. Cir. 2019) ("expressions of a subjective view, an interpretation, a theory, conjecture, or surmise are not provably false and thus cannot undergird a claim of defamation."). The First Amendment protects the right to the freedom of thought—"constitutionally speaking, there is no such thing as a false idea." *Bauman*, 377 F. Supp. 3d at 10. Therefore, "[b]ecause the threat of protracted litigation could have a chilling effect upon constitutionally protected rights of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate." *Barnett v. Denver Pub. Co.*, 36 P.3d 145, 147 (Colo. App. 2001).

Defendant fails to identify provably false statements made by Plaintiff and, therefore, fails to state a claim for defamation. Specifically, Defendant points to a stand-up comedy routine and two podcast appearances in which Plaintiff made statements to the effect of: Defendant was the "first one to tie my *likeness* to the rumor" and "we believe" Defendant "did the most damage [...] given his massive reach [on X]." Counterclaim ¶ ¶ 22.a-c. Plaintiff's comments during these three appearances are clearly her opinions and theories associated with this case. Plaintiff was careful to correct hosts when she believed they were defaming Defendant, which proves she

12

was not adopting or "endorsing" their statements as Defendant claims. *See Id*. at ¶ 22.b. Plaintiff only mentioned the lawsuit when questioned about it, and clearly confined her comments in relation to the active litigation. By stating that Defendant was the "first" to tie Plaintiff's *likeness* to the crash, and that she believes "he did most damage," Plaintiff was clearly interpreting the facts of litigation in which she is a party. These descriptions are merely loose and hyperbolic phrases Plaintiff used to describe Defendant's involvement in this case, and in changing her life forever. Plaintiff was not discussing new facts or information not previously discussed in this case. Plaintiff's opinions and theories associated with litigation in which she is a party are not provably false and are, therefore, protected by the First Amendment. Plaintiff's statements simply represented her subjective views of the facts, as well as her interpretation of the pending litigation in which she is a party. Since Plaintiff's statements are not provably false, they cannot support a claim of defamation against her. *See Bauman*, 377 F. Supp. 3d at 10 (D.C. Cir. 2019); *see also Gordon*, 99 P.3d at 81 (Colo. App. 2004); *Fry*, 408 P.3d at 849.

**B.      Plaintiff's statements were not made with actual malice.**

Defendant's defamation claim fails for want of actual malice. Initially, there can be no doubt that the actual malice standard applies here because the challenged statements relate to a matter of existing public concern about the theories surrounding a horrific midair collision. Thus, the statements have "the potential to impact many members of the public or the public as a whole." *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1036 (10th Cir. 2013). Where statements involve "a matter of public concern," a plaintiff cannot prevail absent proof, by clear and convincing evidence, "that the defendant published the defamatory statement with actual malice." *See Lewis v. McGraw-Hill Broad. Co.*, 832 P. 2d 1118, 1122-23 (Colo. App. 1992).

Actual malice is a "famously daunting" standard. *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021). Few people are able to "prove that the scurrilous things said about them were published by someone with serious doubts as to the truth of his publication." *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996). It is "not satisfied merely through a showing of ill will or malice." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Further, it "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing" the statement. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Spacecon*, 713 F.3d at 1046 (holding that a publisher's failure to pursue "all possible sources" of information prior to publication does not show actual malice). Rather, it requires clear and convincing proof that the speaker "in fact entertained serious doubts as to the truth" of his statements, or acted "with a high degree of awareness of [...] probable falsity." *St. Amant*, 390 U.S. at 731. This level of serious doubt requires a showing of subjective doubts by the defendant; that the speaker actually "harbored subjective doubt." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016).

Defendant claims that Plaintiff "already possessed ample contrary evidence" when she made her allegedly defamatory statements, which proves she made them with actual malice. *See* Counterclaim at ¶ 23. While Plaintiff mentioned the likes of Alex Jones, Ann Coulter, Luke Ford, etc. posting about her involvement in the crash, she did not provide an exhaustive list of everyone who erroneously associated her with the crash. *See id*. at ¶ ¶ 24.a-25. Defendant also failed to point out that the individuals Plaintiff named retracted much quicker than Defendant, and several apologized directly to Plaintiff for spreading defamatory rumors about her. Defendant, on the other hand, took much longer to retract, made multiple posts including Plaintiff's pictures, and did not respond to Plaintiff when she sent him a direct message and gave

him an opportunity to apologize for his conduct. *See* Pl. Decl. (ECF No. 22-1) at ¶ 15. The fact that Plaintiff did not name Defendant in these initial interviews does not prove that she "entertained serious doubts as to the truth" of her statements about Defendant. *St. Amant*, 390 U.S. at 731. It simply demonstrates that Plaintiff did not mention Defendant's name initially likely because she wanted to avoid talking about a lawsuit that had not yet been filed against him. Additionally, Plaintiff made her first allegedly defamatory remarks during her "Kill Tony" debut, which was recorded almost a month before Defendant filed his special motion to dismiss Plaintiff's complaint. During every appearance, Plaintiff was mindful of the hosts making potentially defamatory statements about Defendant being the first to start the "rumor" about her being a transgender terrorist, and she corrected hosts who made those claims. Throughout all of her appearances, Plaintiff discussed Defendant with respect and refused to engage in name calling or derogatory remarks about him. Considering the totality of the circumstances surrounding Plaintiff's comments, Defendant cannot make a prima facie showing of actual malice, and he certainly has not established a reasonable likelihood that he would be able to produce at trial clear and convincing evidence of Plaintiff's actual malice. *See L.S.S. v. S.A.P.*, 523 P.3d 1280, ¶ 42.

      **C.**      **Defendant did not suffer actual damages as a result of Plaintiff's statements.**

Defendant makes vague claims regarding the actual damages he has allegedly suffered due to Plaintiff's statements about him. Defendant concludes that Plaintiff's comments "caused and continue to cause significant damages." Counterclaim at ¶ 38. Defendant says Plaintiff's statements injured his "reputation and image [...], exposed [... him] to public and private hatred, contempt, ridicule, and cause and will continue to cause economic losses." *Id.* at ¶ 39. These allegations are nothing more than conclusory statements that do not amount to a prima facie

15

showing of actual damages. Even if Defendant is able to provide proof of actual damages, he will likely be unable to demonstrate that any damages he has sustained were caused solely by Plaintiff's comments because of three statements. When Defendant claims he has been damaged by Plaintiff, he fails to take into account the fact that he engaged in outrageous, defamatory conduct and has a lawsuit currently pending in this Court. In other words, Defendant's own actions and comments caused actual damage to his reputation and his "business" as an "influencer," not three rogue comments made by Plaintiff.

## **CONCLUSION**

Defendant's Counterclaim reflects an ill-advised attempt to retaliate against Plaintiff through a strategic countersuit. Plaintiff's claims are substantially true and absolutely privileged, and Defendant has failed to adequately plead factual support for one or more of the elements necessary for a defamation claim against Plaintiff. Finally, Colorado's anti-SLAPP statute precludes Defendant from bringing an action based on statements made in public fora that speak to issues of public importance. As such, Defendant's Counterclaim against Plaintiff should be dismissed with prejudice, awarding Plaintiff attorney's fees and costs incurred, together with such other relief the Court deems just and proper.

Respectfully submitted this 27th day of April, 2026.

/s/ Meg Phelan

Meg Phelan, SC Bar No. 78209
**Equality Legal Action Fund**
P.O. Box 81465
Lincoln, Nebraska 68501
(618) 680-0292
meg.phelan@equalityactionfund.org
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion to Dismiss Defendant's Counterclaim and Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 has been served on Defendant's counsel on this 27th day of April 2026, using the CM/ECF system, which will send notification of such filing to the following email addresses:

Dan Ernst
dan@ernstlegalgroup.com

/s/ Meg Phelan
Meg Phelan, SC Bar No. 78209
**Equality Legal Action Fund**
P.O. Box 81465
Lincoln, Nebraska 68501
(618) 680-0292
meg.phelan@equalityactionfund.org
*Attorney for Plaintiff*

17