**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01115-STV

JO ELLIS,

Plaintiff,

v.

MATTHEW S. WALLACE,

Defendant.

---

# ORDER

---

Chief Magistrate Judge Scott T. Varholak

This matter comes before the Court on Plaintiff's Motion to Dismiss and Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 (the "Motion"). [#63] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [## 18; 19] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, as well as oral argument held on July 14, 2026 [#80]. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

# I. BACKGROUND

## A. Colorado's Anti-SLAPP Statute[1]

In 2019, the Colorado General Assembly enacted Colo. Rev. Stat. § 13-20-1101, Colorado's "anti-SLAPP" statute. *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1196 (D. Colo. 2023) (citing *Salazar v. Pub. Trust Inst.*, 522 P.3d 242, 245 n.1 (Colo. App. 2022)). "The statute's purpose is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.'" *Id.* (quoting *Salazar*, 522 P.3d at 246). "To strike this balance, the statute provides a 'special motion to dismiss' for quickly screening out frivolous suits intended to chill speech about matters of public concern." *Id.* (citing *Salazar*, 522 P.3d at 246-47). Plaintiff claims that her allegedly defamatory statements about Defendant fall within the scope of Section 13-20-1101 and, accordingly, Plaintiff filed the Special Motion to Dismiss Defendant's Counterclaim. [*See generally* #63]

[1] *Berk v. Choy* established that when a federal court is sitting in diversity and "a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether." 607 U.S. 187, 192 (2026). "Thus, a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Id*. The Court recognizes that, post-*Berk*, it is possible that Colorado's anti-SLAPP provision no longer applies in this Court and, instead, the Court should only apply Rule 12(b)(6) in resolving the Motion. However, the parties assume the statute applies here. [*See generally* ## 63, 73] And the Court declines to raise the issue sua sponte. Accordingly, the Court will assess Defendant's Special Motion to Dismiss under the anti-SLAPP framework.

### B. Material Facts[2]

On January 29, 2025, a Black Hawk Helicopter and American Airlines Flight 5342 collided mid-air near Ronald Reagan Washington National Airport. [#58 at ¶ 17] Hours after the crash, several posts and articles appeared claiming Plaintiff was the helicopter pilot in the midair collision ("the rumor"), including:

1. On the morning of January 30, 2025, a "well-known podcaster and influencer Luke Ford posted a full video identifying [Plaintiff] as the pilot and discussing the crash as intentional."
2. On January 30, 2025, at 4:35 p.m., X user @RealNytoMwang posted "Plaintiff's photograph with text falsely identifying her as the transgender Black Hawk pilot who crashed the helicopter."
3. On January 30, 2025, at 9:22 p.m., X user @FakeGayPolitics published a post "identifying Plaintiff as the pilot, including her photographs and video clips."
4. On January 30, 2025, at 11:34 p.m., the *Santa Monica Observer* published an online article titled, "A Transgender Pilot Named Jo Ellis Flew Blackhawk Helicopter Into the American Airlines Jet at Reagan National."

[#73-1 at ¶ 8]

---

[2] The facts are drawn from the allegations in Defendant's Counterclaim and Answer (the "Counterclaim") [#58] as well as evidence submitted in support of Defendant's Response to Plaintiff's Motion to Dismiss Defendant's Counterclaim [#73] and Plaintiff's Reply in Support of Plaintiff's Motion to Dismiss [#77].

Defendant made his first X post addressing the rumor on January 31, 2025, at 1:00 a.m. Eastern Time.[3] [*Id.*] And Plaintiff filed the Complaint in this matter on April 9, 2025, alleging that Defendant's posts were defamatory. [#1] Plaintiff then proceeded to appear as a guest on several podcasts. On July 18, 2025, she was interviewed on the *Kill Tony* podcast. [#58 at ¶ 22] During the interview, the hosts asked Plaintiff about the collision rumor and her pending litigation. [#77-1 at ¶ 5] Plaintiff explained that Defendant was the "[f]irst one to tie my likeness to the rumor. We don't know if he started the rumor, but he had millions of followers. He did the most what we can determine as damage." [*Id.*; #73-1 at ¶ 10]

Ten days later, Defendant filed the Special Motion to Dismiss Plaintiff's Complaint, attaching copies of X posts and articles linking Plaintiff to the crash hours before Defendant commented on the rumor. [#73-1 at ¶ 8] Plaintiff then appeared on a second podcast, the *RVA Magazine* podcast, on September 30, 2025. [*Id.* at ¶ 10] Plaintiff was again asked about the rumor and her pending litigation. [#77-1 at ¶ 7] In response, she stated:

> [W]ithin 24 hours of the crash, I was finding out that I was being named as as the pilot as, like, the unnamed female pilot that was the supposed DEI hire that Trump, President Trump had alluded to at a press conference that "we know it's DEI because we just know." And so that kind of sent the online world into a frenzy of like, let's figure out who this pilot is. And, from what we can tell, [Defendant] picked up on that and used a picture of me and the [Michael] Smerconish article and, um, kind of put it all together. And with his following, he had, I think, two and half million followers or something like that, we believe he did the most damage. Like it would not have had the legs it had if he hadn't posted about it.

[3] Defendant fails to clarify the time zones for any of the other X posts or the *Santa Monica Observer* article. [*See* #73-1 at ¶ 8] The Court assumes that Defendant is consistently using Eastern Standard Time and thus the referenced X posts and the *Santa Monica Observer* article preceded Defendant's first post.

[*Id*; #73-1 at ¶ 10]

Finally, on January 12, 2026, Kim Congdon interviewed Plaintiff on *The Kim Congdon Takeover* podcast. [#77-1 at ¶ 10] Congdon asked Plaintiff if she was suing the individual that started the rumor. Plaintiff responded:

> I don't, yeah, I don't know if he started it, but he definitely, like, he pushed it. He's the first one to tie my likeness to it. Yeah. His name's Matt Wallace and, uh, he, uh, millions of followers on Twitter, and he pushed it pretty hard and we believe he did the most damage and so I'm suing him in federal court."

[*Id*.; #73-1 at ¶ 10]

On April 6, 2026, Defendant filed the Counterclaim alleging that these podcast statements were defamatory. [#58] On April 27, 2026, Plaintiff filed the Special Motion to Dismiss Defendant's Counterclaim. [#63] Defendant responded to the Motion [# 73] and Plaintiff replied [#77]. The Court held oral argument on the Motion on July 14, 2026 and took the matter under advisement.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### B. Special Motion to Dismiss Pursuant to Colo. Rev. Stat. § 13-20-1101(3)(a)

"A court resolves a special motion to dismiss through a two-step process." *Coomer v. Salem Media of Colorado, Inc.* (*Coomer II*), 565 P.3d 1133, 1142 (Colo. App. 2025) (citing *Anderson v. Senthilnathan*, 540 P.3d 1248, 1253 (Colo. App. 2023)). First, the court determines whether the anti-SLAPP statute applies. *Id.* (citing *Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 577-78 (Colo. App. 2024)). "In doing so, it determines whether the claim arises from an act 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.'" *Id.* (alteration in original) (quoting *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1285 (Colo. App. 2022)). Second, the court considers "the pleadings and affidavits and determines whether the plaintiff has

established a 'reasonable likelihood [of] prevail[ing] on the claim.'" *Id.* (alteration in original) (quoting *L.S.S.*, 523 P.3d at 1285-86).

At the second step, "the court may not weigh the evidence or resolve factual conflicts." *Coomer v. Donald J. Trump for President, Inc.* (*Coomer I*), 552 P.3d 562, 578 (Colo. App. 2024) (citing *Rosenblum v. Budd*, 538 P.3d 354, 362 (Colo. App. 2023)). Rather, "it must assess whether the facts in the affidavits submitted by the plaintiff, 'if true, establish a reasonable likelihood of proving each claim under the applicable burden of proof.'" *Id.* "If the plaintiff meets this burden, the court must deny the motion to dismiss." *Id.* "Otherwise, the claim must be dismissed." *Id.* (citing *Senthilnathan*, 540 P.3d at 1253).

## III. Analysis

Defendant alleges that Plaintiff made repeated defamatory statements that: (1) Defendant "was the first one to post [Plaintiff's] likeness in connection with the helicopter crash,"[4] and (2) that Plaintiff believes Defendant's "statements caused the most damage."[5] [#58 at ¶ 22] The Motion argues Defendant's claim should be dismissed

[4] Plaintiff alleges that there is a material difference between claiming that Defendant was the first to *name* Plaintiff in relation to the tragedy, and that Defendant was the first one to post Plaintiff's *likeness* in connection with the collision. [*See* #63 at 6-7] The distinction is unclear to the Court. Accordingly, the Court assesses Plaintiff's "likeness" statements as conveying Defendant was the first to connect Plaintiff to the collision.

[5] Defendant alleges that Plaintiff expressed a third set of defamatory remarks in his Counterclaim. Specifically, he claims Plaintiff publicly accused him "of intentionally lying, fabricating, and making statements with 'actual malice' that [Plaintiff] was piloting the helicopter that crashed." [#58 at ¶ 5] Defendant expands this allegation in his Response to Plaintiff's Special Motion to Dismiss. There he claims that Plaintiff made "repeated defamatory statements" that Defendant "intentionally lied, concocted, orchestrated, and fabricated, the false narrative, . . . in order to push [Defendant's] bigoted anti-trans agenda." [#73 at 8 (internal quotations omitted)] However, Defendant fails to identify specific out-of-court statements that support this claim and that differ from Plaintiff's "likeness" and "most damage" statements. His affidavit makes brief reference to comments purportedly made by Plaintiff that Defendant "concocted a destructive and

because: (1) Plaintiff's statements are litigation-related, and so, they are not actionable; (2) Defendant failed to show a reasonable likelihood of prevailing on his claim, and so, his claim should be dismissed pursuant to Colo. Rev. Stat. § 13-20-1101; and (3) Defendant failed to state a claim upon which relief can be granted. [#63] The Court addresses these arguments in turn.

### A. Litigation Privilege

"Colorado has adopted the 'formulation of the [litigation] privilege in [§ 586] of the Restatement (Second) of Torts.'"[6] *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, 142 F.4th 1262, 1265 (10th Cir. 2025) (alteration in original) (quoting *Killmer*, 535 P.3d at 96). Under the litigation privilege:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*Killmer,* 535 P.3d at 96 (citing Restatement (Second) of Torts § 586 (1977)). "As an absolute privilege, it provides 'absolute immunity' to the speaker, even if the statements

---

irresponsible defamation campaign" out of anti-transgender bigotry, but provides no context for where or when such statements were made. [#73-1 at ¶ 15] To the extent that Defendant is referencing statements or theories made in litigation filings, such statements are absolutely privileged and not actionable. *See Killmer, Lane, & Newman, LLP v. BKP, Inc.*, 535 P.3d 91, 100 (Colo. 2023) (finding that alleged defamatory statements that "had some relation to and were made in furtherance of the objective of the class action litigation, . . . were privileged").

[6] "A federal court sitting in diversity must apply the law of the forum state." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 930 (10th Cir. 2018). This rule applies to the attorney client privilege, though it does not apply to the work product privilege. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). Here, the parties agree that Colorado law applies. [## 63 at 6-7; 73 at 4-5] And where the parties have agreed that Colorado law applies to the litigation privilege, the Tenth Circuit has applied Colorado law. *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, 142 F.4th 1262, 1265 (10th Cir. 2025). Thus, the Court will apply Colorado law.

are false, defamatory, or made with actual malice." *Coomer I*, 552 P.3d at 597-98 (citing *Gonzales v. Hushen*, 540 P.3d 1268, 1279 (Colo. App. 2023)).

Plaintiff alleges that the statements at issue in the Counterclaim are "litigation-related statements," which are "absolutely privileged, and therefore, not actionable." [#63 at 5] However, "Colorado courts only discuss this litigation privilege in the context of statements made by attorneys" or pro se litigants. *Preston v. Flesher*, No. 25CA0914, 2026 WL 2363492, at *5 (Colo. App. Aug. 13, 2026). Here, Plaintiff seeks to extend that privilege to statements made by a represented party that were neither made inside a courtroom nor in a court filing. Plaintiff offers no argument for why such an extension is warranted and the cases she cites provide no related insight. *See, e.g., Killmer,* 535 P.3d 93-101 (discussing whether statements made by an attorney during a press conference and a subsequent press release were privileged statements); *see also Dep't of Admin. v. State Pers. Bd.*, 703 P.2d 595, 596-98 (Colo App. 1985) (discussing whether statements made by an employee in a quasi-judicial hearing regarding misconduct allegations were privileged). Consequently, the Court declines to extend the privilege to Plaintiff's out-of-court statements.

**B. Special Motion to Dismiss Pursuant to Colo. Rev. Stat. § 13-20-1101(3)(a)**

To resolve a special motion to dismiss under Section 13-20-1101, a court must engage in a two-step analysis. *Coomer I*, 522 P.3d at 577 (citing *Senthilnathan*, 540 P.3d at 1253). "First, the court must determine whether the defendant has made a threshold showing that the anti-SLAPP statute applies—'that is, whether the claims arise from the defendant's exercise of free speech or right to petition in connection with a public issue.'"

*Id*. at 577-78. "Second, if the defendant meets that threshold, the burden shifts to the plaintiff to establish a reasonable likelihood of prevailing on the claim." *Id.* at 578.

Here, Plaintiff stipulates that the anti-SLAPP statute applies to the Counterclaim, satisfying the first step of the analysis. [#63 at 11] Thus, the remaining question is whether Defendant has established a reasonable likelihood of prevailing on his defamation claim. To prevail on a defamation claim under Colorado law,[7] "a plaintiff generally must prove four elements: (1) a defamatory statement concerning the plaintiff; (2) publication; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special damages or the existence of special damages." *Id*. at 581 (citing *Rosenblum*, 538 P.3d at 365). However, if the defamatory statement "involves a matter of public concern, three heightened standards apply." *Id.* (citing *L.S.S.*, 523 P.3d at 1287). "First, the plaintiff must prove the falsity of the statement by clear and convincing evidence, rather than by a mere preponderance." *Id*. "Second, the plaintiff must prove by clear and convincing evidence that the speaker acted with actual malice." *Id*. "Third, the plaintiff must prove actual damages, even if the statement is defamatory per se." *Id*. "Clear and convincing evidence is 'evidence that is highly probable and free from serious or substantial doubt.'" *Id*. (quoting *Destination Maternity v. Burren*, 463 P.3d 266, 271 (Colo. App. 2020)).

Here, Plaintiff argues that Defendant's defamation claim fails under the anti-SLAPP statute because: (1) Plaintiff's statements were not materially false primarily because they were not factual assertions; (2) Defendant failed to provide sufficient

---

[7] Colorado law also applies to Defendant's defamation claim. *Siloam Springs Hotel*, 906 F.3d at 930. And the parties agree on this point. [## 63 at 10-11; 73 at 3-4]

evidence that Plaintiff acted with actual malice; and (3) Defendant failed to provide sufficient evidence to prove actual damages. [## 63 at 10-16; 77 at 2-8] The Court will address each argument in turn. Before doing so, however, the Court first addresses whether the challenged statements relate to a matter of public concern, as that question impacts the rest of the analysis.

**1. Matter of Public Concern**

Plaintiff argues that Plaintiff's "challenged statements relate to a matter of existing public concern about the theories surrounding a horrific midair collision."[8] [#63 at 13] "Generally, a matter is of public concern whenever 'it embraces an issue about which information is needed or is appropriate,' or when 'the public may reasonably be expected to have a legitimate interest in what is begin published.'" *L.S.S.*, 523 P.3d at 1287-88 (quoting *Lawson v. Stow*, 327 P.3d 340, 346 (Colo. App. 2014)). "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Anderson v. Colorado Mountain News Media, Co.*, No. 18-cv-02934-CMA-STV, 2019 WL 6888275, at *3 (D. Colo. Dec. 18, 2019) (citing *Butler v. Bd. of Cty. Comm'rs for San Miguel Cty.*, 920 F.3d 651, 655-56 (10th Cir. 2019)). "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public." *Id*. (citing *Cox. Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975)).

---

[8] Defendant provides no argument on this matter. [*See generally* #73]

Here, Plaintiff's statements involved a matter of public concern. The statements discussed a rumor "that Plaintiff was a 'trans terrorist,' who intentionally crashed an Army UH-60L Black Hawk helicopter into an airliner over the Potomac River and killed 67 people on January 29, 2025." [#63 at 2] The public may reasonably be expected to have a legitimate interest in the topic as it involves allegations of the commission of a crime and the safety of the community. Consequently, Plaintiff's statements involve matters of public concern. *See Shoen v. Shoen*, 292 P.3d 1224, 1230-31 (Colo. App. 2012) (finding that statements discussing a murder investigation involved legitimate public concerns because they addressed the completeness of the investigation, and "whether the murder remained partially 'unsolved'").

**2. Statement of Opinion or Fact**

"Defamation is 'a communication that holds an individual up to contempt or ridicule thereby causing [that individual] injury or damage.'" *Coomer I*, 552 P.3d at 581 (quoting *Keohane v. Stewart*, 882 P.3d 1293, 1297 (Colo. 1994)). However, "[s]tatements of pure opinion are constitutionally protected and not actionable as defamation." *Wilburn v. Guthrie*, 589 P.3d 947, 957 (Colo. App. 2026) (citing *Lawson*, 327 P.3d at 348).

"[T]he fact a statement may be prefaced by a phrase such as 'In my opinion' or 'I believe' is not determinative of whether the statement is one of pure opinion." *Lawson*, 327 P.3d at 348. Rather, to determine whether a statement is protected by the First Amendment as a "pure opinion," courts apply a two-part test. *Coomer I,* 552 P.3d at 588 (citing *Keohane*, 888 P.2d at 1299). First, the court asks "whether the statement is 'sufficiently factual to be susceptible of being proved true or false.'" *Id*. (quotation omitted). Second, the court asks "whether reasonable people would conclude that the

assertion is one of fact." *Id*. at 589 (quotation omitted). "To determine how a reasonable person would interpret the statement, [Colorado courts] consider how the assertion is phrased, the context of the statement as a whole, and the surrounding circumstances." *Wilburn*, 589 P.3d at 957 (citing *Keohane*, 882 P.2d at 1299).

Here, Defendant alleges that Plaintiff made two non-privileged defamatory statements: (1) Defendant "was the first one to tie [Plaintiff's] likeness to the rumor," and (2) that Plaintiff believes Defendant "did the most . . . damage." [#58 at ¶ 22] Plaintiff contends that both assertions were pure opinion and are protected by the First Amendment. [#63 at 12-13] The Court addresses each statement in turn.

**a. Plaintiff's "Likeness" Statements**

The first set of allegedly defamatory statements is Plaintiff's statements that Defendant was "the first one to tie [her] likeness" to the helicopter crash rumor. [#58 at ¶ 22] The Court agrees with Defendant that these statements are not protected opinions.

First, the statements are susceptible of being proved true or false. Either Defendant was or was not the first to post Plaintiff's likeness in connection with the helicopter crash. *See Coomer I*, 552 P.3d at 582, 589 (finding the statements were susceptible of being proved true or false because the plaintiff either "made the statement on the conference call" and "took steps to undermine the election" or he did not). Such statements are factual assertions.

Second, a reasonable person would conclude that the statements were an assertion of fact. Plaintiff did not use hyperbolic language. *Compare id.* (finding statements claiming the plaintiff "participated in an Antifa conference call," and "intended to subvert the presidential election" did not contain hyperbolic language and did not

qualify as protected opinion), *with Keohane*, 882 P.2d at 1301 (finding that an editorial letter using "colorful and exaggerated terms" was protected opinion because the tone indicated that the defendant was venting her anger and "her words should not be taken literally"). Rather, Plaintiff's statements were made in declarative terms. Courts have found that such phrasing would lead a reasonable person to conclude the assertion was one of fact. *See Coomer I*, 552 P.3d at 589 (finding that statements reported in declarative terms, made in the context of broader claims of election fraud nationwide, supported a finding "that defendants' audiences would take the sentences as fact").

Consequently, Plaintiff's statements that Defendant was the "[f]irst one to tie [her] likeness to the rumor" are factual assertions and not protected opinions.

**b. Plaintiff's "Most Damage" Statements**

The second set of allegedly defamatory statements is Plaintiff's statements that she believed Defendant's posts caused her the "most damage." [#58 at ¶ 22] The Court agrees with Defendant that these are not protected opinions.

First, similar to the "likeness" statements, these statements are susceptible of being proved true or false. Although Plaintiff couches her statements in terms of an opinion, the statements contain factual implications. Either Defendant's posts did or did not cause the most damage to Plaintiff. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990) (noting that "[s]imply couching . . . statements in terms of opinion does not dispel [factual] implications"). Consequently, the sentence is not entitled to absolute immunity under this prong. *See Lawson*, 327 P.3d at 348 ("To be entitled to full constitutional protection, [a] statement must not contain a provably false factual connotation or, if it does, it must not be such that it could reasonably be interpreted as stating actual facts.").

Second, the statements can reasonably be interpreted as stating facts about Defendant. Although the statements were made on podcasts, which can be viewed as opinion platforms, the litigation discussion was serious and implied that Plaintiff was making a factual assertion. *See Coomer I*, 552 P.3d at 589 (noting that "assertions of fact can be made on an opinion platform"). Specifically, Plaintiff did not use loose or hyperbolic language that provided the impression that her statements should not be taken seriously. *Cf. id*. (holding that statements describing the plaintiff as "unhinged," a "lunatic," and "evil" "would qualify as protected opinion or hyperbole" (emphasis omitted)). Rather, the statements were made alongside a discussion of Defendant's large X following and a claim that the rumor "would not have had the legs it had if [Defendant] hadn't posted about it." [#77-1 at ¶¶ 5-7, 10] Considering the language of the statements and the relevant context, a reasonable person would conclude that Plaintiff was asserting a fact.

Consequently, Plaintiff's "most damage" statements are actionable, factual assertions.

**3. Falsity**

"To establish falsity, a plaintiff must show that the substance or the gist of the statement was inaccurate." *Jogan Health, LLC v. Scripps Media, Inc.*, 565 P.3d 1160, 1168 (Colo. App. 2025) (citing *Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. 1972)). Minor inaccuracies are not sufficient to establish falsity. *Id*. Rather, "[a] material falsehood is one that is likely to cause reasonable people to think significantly less favorably about the plaintiff than if they knew the whole truth." *Wilburn*, 589 P.3d at 960 (quotation omitted).

As explained above, Plaintiff's statements involved a matter of public concern. Thus, "[t]o survive an anti-SLAPP motion to dismiss, [Defendant] must show a reasonable probability that [he] will be able to prove material falsity by clear and convincing evidence at trial." *Id*. (citing *Coomer I*, 552 P.3d at 581). The Court concludes that Defendant has met his burden on both non-privileged statements.

First, with respect to Plaintiff's "likeness" statements, Plaintiff repeatedly claimed that Defendant was "the first one to tie [her] likeness to the rumor." [#58 at ¶ 22] However, Defendant provided several pieces of evidence showing that other X users linked Plaintiff to the rumor before Defendant. [*See* #73-1 at ¶ 8] Because this evidence suggests that the substance of Plaintiff's statement was inaccurate, Defendant has established a reasonable likelihood that he will be able to prove the falsity of Plaintiff's statements at trial. *See Coomer I*, 552 P.3d at 589-91 (finding that plaintiff met his burden of proof to establish falsity because he provided evidence that directly contradicted claims that he had attended an Antifa conference call and indicated a desire to affect the outcome of the election).

Second, Defendant has shown a reasonable likelihood of proving by clear and convincing evidence that Plaintiff's "most damage" statements were false. Defendant declares that "the rumor was spread primarily by much larger voices than [Defendant's,] such as Ann Coulter's, Alex Jones's, and others." [#73-1 at ¶ 6] He claims that these "prominent individuals and entities" had a "far greater reach than anything [he] posted" about Plaintiff. [*Id*. at ¶ 13] If true, this declaration could provide clear and convincing evidence that Defendant's "most damage" statements were false. At the very least, it creates a question for the jury since Plaintiff has offered competing evidence. [*See* #77-

1 at ¶ 15 (noting that one of Defendant's posts "received over 4.8 million views.")] Consequently, Defendant has met his burden of proof for Plaintiff's "most damage" statements. *See Coomer I*, 552 P.3d at 591 (noting that because the court cannot weigh evidence when resolving an anti-SLAPP motion, the presence of competing evidence established that the plaintiff had met his burden of proof and "[t]he question of which version of events to believe was one for the jury").

### 4. Actual Malice

A speaker publishes a statement with actual malice if they "made the statement 'with actual knowledge that it was false or with reckless disregard for whether it was true.'" *Coomer I,* 552 P.3d at 591 (quoting *L.S.S.*, 523 P.3d at 1288.) "A speaker acts with reckless disregard if the speaker 'entertain[s] serious doubts as to the truth of the statement or act[s] with a high degree of awareness of its probable falsity.'" *Id*. (quoting *Creekside Endodontics, LLC v. Sullivan*, 527 P.3d 424, 431 (Colo. App. 2022)). However, "a defendant cannot defeat a defamation claim at this early stage simply by saying they believed their statements were true." *Id.* at 596 (citing *L.S.S.*, 523 P.3d at 1290). And when an alleged defamatory statement includes a matter of public concern, as it does here, "[t]he plaintiff then bears the additional burden of proving by clear and convincing evidence that the speaker published the statement with actual malice." *Rosenblum*, 538 P.3d at 365 (citing *L.S.S.*, 523 P.3d at 1287).

#### a. Plaintiff's "Likeness" Statements

The Court begins with Plaintiff's "likeness" statements. At this stage, the Court concludes that Defendant has established a reasonable likelihood that a jury could find

by clear and convincing evidence that Plaintiff acted with a high degree of awareness of the probable falsity of her statements.

First, Plaintiff's statements on the *RVA Magazine* podcast and *The Kim Congdon Takeover* podcast occurred after Defendant filed his Special Motion to Dismiss and Plaintiff filed her response. [*See* ##16; 22; 73-1 at ¶ 10] In his Special Motion to Dismiss, Defendant included evidence of other X users linking Plaintiff to the rumor before Defendant's first post. [*See* #16-6 at ¶ 4; *see also* #73-1 at ¶ 8] And Plaintiff's podcast statements referred to the ongoing litigation. [*See* #77-1 at ¶¶ 7, 10] Thus, it is plausible to infer that Plaintiff had a high degree of awareness of the probable falsity of her statements. *See Anderson v. Colorado Mountain News Media, Co.*, No. 18-cv-02934-CMA-STV, 2019 WL 6888275, at *5-6 (D. Colo. Dec. 18, 2019) (finding that it was plausible to infer that Defendants were aware that an underlying complaint unambiguously contradicted their statements because their statements "reflect[ed] a substantial degree of familiarity" with the complaint).

Second, Plaintiff's statements reveal inconsistencies in her account of the underlying events. During her interview on the *Kill Tony* podcast and *The Kim Congdon Takeover* podcast, Plaintiff repeatedly stated that she did not know whether Defendant started the rumor despite claiming he was "the first one to tie [her] likeness to it." [#77-1 at ¶¶ 5, 10] Plaintiff repeated these conflicting statements in her declaration. [*See* #77-1 at ¶ 14 (noting that she "corrected two podcast hosts who claimed [Defendant] was the first to blame [her] for this horrific crash because [she] clearly knew that information was incorrect.")] Consequently, such inconsistencies weigh in favor of finding that Defendant has shown a reasonable likelihood of proving actual malice by clear and convincing

evidence. *See Senthilnathan*, 540 P.3d at 1261-62 (finding that inconsistencies in the defendant's "account of the events underlying her allegations," constituted sufficient evidence of actual malice).

**b. Plaintiff's "Most Damage" Statements**

Next, the Court addresses Plaintiff's "most damage" statements. "Actual malice can, and often must, be proved by circumstantial evidence," as it is rare to have direct evidence that a speaker knew their statement was false. *Coomer I*, 552 P.3d at 591 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989)). "[C]ircumstantial evidence of actual malice may include (1) the speaker's hostility toward the plaintiff; (2) inconsistencies in the source's account; (3) reasons to doubt the veracity or reliability of the source; (4) the inherent improbability of the claim; and (5) other credible information contradicting the information." *Id*. at 592.

Here, Defendant has failed to provide sufficient direct or circumstantial evidence of actual malice. Defendant declares that at the time Plaintiff made her public statements, she knew "prominent individuals and entities" had discussed her connection with the crash and that those individuals had a "far greater reach than anything [Defendant] posted." [#73-1 at ¶ 13; *see also id.* at ¶ 14 (Defendant declared that "conclusive evidence was filed in this case establishing . . . that publications of much larger audience and greater influence" discussed Plaintiff's connection to the crash)] However, such evidence does not support an inference that Plaintiff entertained serious doubts as to the truth of the statements or was highly aware of their probable falsity.[9] Further, Defendant provides

[9] A simple example demonstrates both this point and the distinction between Plaintiff's "likeness" statements. Assume five bloggers, each with five followers, each post about a

no other evidence to support his actual malice claim here. Because factual allegations alone are not sufficient to withstand an anti-SLAPP motion, Defendant has failed to meet his burden of proof. *Coomer I*, 552 P.3d at 578 (noting that "to defeat an anti-SLAPP motion, the plaintiff generally must go further" than only providing factual allegations and instead must "present *evidence* establishing a reasonable likelihood of success").

Accordingly, the Court ORDERS that the Motion be GRANTED to the extent it seeks to dismiss the defamation claim involving Plaintiff's "most damage" statements.

**5. Damages**

"Actual damages may be established by 'proving harm to reputation, personal humiliation, mental anguish, or physical suffering.'" *Id*. at 597 (citing *Keohane*, 882 P.2d at 1304). "Thus, a plaintiff's affidavit attesting to mental anguish and reputational harm resulting from the statements is sufficient to defeat an anti-SLAPP motion." *Id*. (citing *Senthilnathan*, 540 P.3d at 1265).

Here, Defendant has made a sufficient showing of actual damages to sustain his claim. In his declaration, Defendant attested that he had suffered "severe emotional

famous actor having an affair. The affair did not occur. Subsequently, a podcaster with millions of followers posts that the actor was having an affair. Based upon this podcaster's broad following and reputation in the community, the New York Times—with significantly more subscribers than the podcaster—runs a story about the actor having an affair. If the actor states that the podcaster was the first to run the story, knowing five other bloggers ran the story, the actor spoke knowing her statement was false and thus acted with actual malice. On the other hand, the mere fact that the actor stated that the podcaster did the most harm—even knowing the New York Times had a broader audience—does not necessarily equate to actual malice; the actor could easily believe (even if wrongfully) that the podcaster caused the most harm because the podcaster gave credibility to the false rumor and thus led others to run with the story. Here, Defendant has only presented evidence that those with broader audiences likewise posted the false story. But, as the hypothetical shows, this does not necessarily mean that Plaintiff's statement that Defendant caused the most damage was made with actual malice.

distress, anxiety, humiliation and reputational harm." [#73-1 at ¶ 19] Specifically, he alleged that Plaintiff's statements have caused: (1) "significant stress and strain in [his] family relations," and (2) stress from his alleged tarnished reputation. [*Id.*] Although Plaintiff claims that that Defendant asserted these damages "in conclusory fashion" [#77 at 6], the Court finds the presented evidence sufficient to satisfy Defendant's burden at this stage. *See Coomer I*, 552 P.3d at 597 (citing *Keohane*, 882 P.2d at 1305) ("A plaintiff's own testimony regarding the emotional distress the statements caused them is alone sufficient to support a finding of actual damages.").

Accordingly, because Defendant has satisfied all elements of his defamation claim related to Plaintiff's "likeness" statements, the Court ORDERS that the Motion be DENIED to the extent it seeks to dismiss the defamation claim involving Plaintiff's "likeness" statements.[10]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Dismiss [# 63]. Specifically, the Motion is **DENIED** to the extent it seeks to dismiss the defamation claim involving Plaintiff's "likeness" statements and

---

[10] Plaintiff moves this Court to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and under a special motion to dismiss pursuant to Colorado's Anti-SLAPP Statute. [*See* #63 at 1] In federal cases, anti-SLAPP motions mounting legal challenges are analyzed under Rule 12(b)(6). *See Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1133-34 (D. Colo. 2022) (analyzing the plaintiff's anti-SLAPP motion challenging the legal sufficiency of the defendant's counterclaim under Rule 12(b)(6)). Because Plaintiff mounts a legal challenge under her Special Motion to Dismiss, Plaintiff's motion to dismiss under Rule 12(b)(6), independent of the anti-SLAPP motion, is redundant. Indeed, Plaintiff's Motion has not identified any manner in which the "likeness" statements would survive the Special Motion to Dismiss but not survive a Rule 12(b)(6) challenge. [*See generally* #63]

**GRANTED** to the extent it seeks to dismiss the defamation claim involving Plaintiff's "most damage" statements.

DATED: November 13, 2026

BY THE COURT:

s/Scott T. Varholak
Chief United Stated Magistrate Judge